**BELT et al. v. BUSH et al.**

No. 9231—Opinion Filed Nov. 12, 1918.

Rehearing Denied Dec. 31, 1918.

(176 Pac. 935.)

**1. Executors and Administrators—Striking Homestead from Administrator's Inventory.**

Under the provisions of section 13, art. 7, of the Constitution, the county court has jurisdiction to entertain a petition to strike the homestead of the decedent, possessed and occupied by the surviving spouse of the decedent, from the inventory of the estate of a deceased person filed by the administrator, where the same has been listed in such inventory as an asset of the estate.

**2. Same—Correcting Inventory—Petition.**

The petition in the instant case praying to set apart the homestead of the deceased to the surviving spouse considered, and held to state facts sufficient to invoke the jurisdiction of the county court to correct the inventory filed by the administrator by striking from such inventory the homestead erroneously listed as an asset of the estate.

**3. Homestead—Right of Surviving Spouse—Continuance—Statute.**

Section 6328, R. L. 1910, providing that upon the death of either husband or wife the survivor may continue to possess and occupy the whole homestead until it is otherwise disposed of according to law, the right of the surviving spouse to occupy and possess lands occupied and used by the decedent and family as a homestead continues so long as he

preserves its homestead character by maintaining a home thereon.

### 4. Indians—Right of Surviving Spouse — Indian Allotment as Homestead.

The right of the surviving spouse to possess and occupy land occupied and used by the deceased spouse and family as a homestead under the provisions of section 6328, R. L. 1910, applies to an allotment of a full-blood Indian of the Five Civilized Tribes used and occupied by such Indian and her family as a homestead.

### 5. Same—Homestead Character.

Where, at the time of taking an allotment, the allottee purchased improvements which were supposed to be situated upon the land allotted, consisting of dwelling house, barn, orchard, and outbuildings, which improvements were used and occupied by the allottee and her family as a homestead from the time of allotment until her death, the fact that the residence of the allottee was in fact situated upon an adjoining allotment, while the barn and orchard were situated upon her allotment, which fact was not discovered until shortly before her death does not deprive her allotment of its homestead character.

(Syllabus by Rummons, C.)

Error from District Court, Haskell County: W. H. Brown, Judge.

Petition by Sheldon Bush personally and as administrator of the estate of Linda Bush and Daniel Bush to have a homestead set apart for the family of deceased, opposed by W. L. Belt and others. From an order setting apart a homestead of Linda Bush, deceased, to Sheldon Bush and Daniel Bush, defendants bring error. Affirmed.

Wilkinson & Scott, for plaintiffs in error.

Guy A. Curry, Duke Frederick, and White & Cox, for defendants in error.

Opinion by RUMMONS, C. Defendant in error, Sheldon Bush, about the year 1900 married Linda Folsom, a full-blood Choctaw Indian. At the time of the marriage, Linda Folsom had four children—Charlie Walker, George Walker, Elizabeth Prince (nee Walker), and Sam Folsom, all full-blood Choctaw Indians. After the marriage the defendant in error, Daniel Bush, was born. At the time of the trial he was about 14 years of age. Linda Bush and her five children each received an allotment. The land here in controversy is part of a tract of about 200 acres allotted to Linda Bush. Charlie Walker, one of the children, received an allotment adjoining the allotment of his mother. At the time of the allotment, the improvements on the land were purchased from the occupying claim-

ant. The evidence shows that the residence was in fact situated upon the land allotted to Charlie Walker; that the barn, the orchard, the well, and part of the garden were situated upon the allotment of Linda Bush; that it was thought by all the parties at the time the allotment was made that the improvements, including the residence, were upon the allotment of Linda Bush; that some time before the death of Linda Bush, which occurred in 1913, the lines between the two allotments were surveyed and it was found that the residence was upon the allotment of Charlie Walker, the line running about three feet from the house. The record does not clearly disclose how long before the death of Linda Bush this was discovered. The defendants in error and Linda Bush, the wife and mother, occupied the residence and the improvements upon her allotment and cultivated the same either personally or by tenants from the time of the allotment up to the death of Linda Bush. After her death, Charlie Walker notified the defendants in error to move out of the house, which they did, moving to the town of Brooken adjoining the land, where they lived for about four or five months until other buildings on the allotment occupied by tenants became vacant, when they returned to the land, and still occupy the same. Sheldon Bush is the duly appointed, qualified, and acting administrator of the estate of Linda Bush, and as such filed his inventory, in which the 200-acre allotment was listed as an asset of the estate. After the death of Linda Bush George Walker, Elizabeth Prince, and Sam Folsom conveyed their interest in the land of Linda Bush to the plaintiff in error W. L. Belt.

On September 7, 1914, Sheldon Bush, as administrator of the estate of Linda Bush, filed a petition in the county court of Haskell county, reciting that letters of administration were issued by said court, and that, as administrator he had returned an inventory and appraisement of the estate, and that through mistake and inadvertence the homestead was included in said inventory and appraisement; that lot 3 and the S. ½ of the N. W. ¼ and the N. ½ of the N. ½ of the S. W. ¼ of section 3, township 9 N., range 18 E., in Haskell county, were occupied by the deceased and her family at and prior to the time of her death as a homestead; that since her death and up to the filing of the petition the family of said deceased had remained in possession of said homestead; that the family of said deceased consisted of Sheldon Bush, husband of the deceased, and Daniel Bush, minor, son of said deceased. The petition prays that said homestead be

set apart for the use of the family of said deceased.

The county court set this petition down for hearing and caused due notice of such hearing to be given to those interested in the estate. Upon the hearing the county court sustained the petition and set apart the homestead to the defendants in error. The plaintiffs in error appealed from the judgment of the county court to the district court, where the cause was tried de novo. The district court sustained the petition of the defendants in error, struck the homestead from the inventory, and set apart the homestead to the defendants in error. The plaintiffs in error, being aggrieved at this judgment, prosecute this proceeding in error to reverse the same.

It is first contended that the county court was without jurisdiction to entertain the petition of the defendants in error for the reason that no provision is made in the statutes for the setting apart of a homestead to the surviving husband or wife or children of a decedent by the county court. It is true that there is no specific provision now in our statutes for such a proceeding. Section 1302 of the statutes of 1893 (section 5267, Snyder's Compiled Laws 1909), providing that, if no homestead had been selected as provided by the homestead law, the judge of the county court must cause the same to be done, was omitted from the Revised Laws of 1910.

Section 6328, R. L. 1910, provides:

"Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead, which shall not in any event be subject to administration proceedings, until it is otherwise disposed of according to law; and upon the death of both husband and wife the children may continue to possess and occupy the whole homestead until the youngest child becomes of age."

Section 13, art. 7, of the Constitution, provides that the county court shall have the general jurisdiction of a probate court and shall transact all business appertaining to the estates of deceased persons.

It is true that under the provisions of section 6328, R. L. 1910, no order of the county court is required to entitle the surviving husband or wife to continue in the possession and occupancy of the homestead. The right to occupy the homestead is given by the statute and requires no order of court to vitalize it and give it effect. In the instant case, however, the administrator had, contrary to the statute, listed the homestead in his inventory as an asset to the estate.

The county court had authority, under the provisions of our Constitution above referred to, to correct the inventory as filed by the administrator and to strike from it the homestead, which was inadvertently listed as an asset of the estate. While the prayer of the petition of the administrator is that the homestead be set apart for the benefit of himself and his son, yet the legal effect of his petition was to invoke the power of the court to exclude the homestead from the assets of the estate of the decedent returned by him in his inventory. We therefore conclude that this contention of the plaintiffs in error is without merit.

It is next contended that, because the interests of four of the heirs of Linda Bush had been conveyed, the homestead had been disposed of according to law under the provisions of section 6328. In Holmes v. Holmes. 27 Okla. 140, 111 Pac. 220, 30 L .R. A. (N. S.) 920, this court had under consideration the meaning of the words "until it is otherwise disposed of according to law." and it is there held:

"When a husband dies seized in fee of land occupied and used by himself and family as a homestead, his surviving wife. although without children. is entitled, by reason of section 1607, Wilson's Rev. & Ann. St. 1903. as against his heirs, to occupy and possess the whole of such homestead as long as she preserves its homestead character by maintaining a home thereon."

The heirs of Linda Bush had full right upon her death to sell and convey their interests in her estate. They, however, had no interest in the homestead right, and their conveyance therefore did not dispose of the homestead. To give to the statute the construction contended for by plaintiffs in error would be to render it utterly useless for the purposes for which it was intended, since under that construction any heir of a decedent could wipe out the right of a surviving spouse to occupy the homestead by conveying his interest in the estate.

It is next contended that, the allotment being restricted, the county and district courts were without jurisdiction. Upon this contention it is well to note that the homestead provided for in the acts of Congress relating to lands of the Five Civilized Tribes is not identical with the homestead provided for in our Constitution and laws. Norton v. Kelley, 57 Okla. 222, 156 Pac. 1164. The estates of deceased Indians of the Five Civilized Tribes are subject to the jurisdiction of the county courts of this state, and, while the lands of deceased Indians cannot probably be administered upon to the same extent as the lands of non-Indians, since

they are not subject to the payment of debts, viewing the petition in the light we do as praying to exclude the homestead from the assets of the estate listed in the inventory, we think the county court clearly had jurisdiction to entertain the petition, even though the lands involved were restricted.

It is also contended that, because of the fact that the residence of the deceased Linda Bush was not upon the land claimed as a homestead, she had never occupied the same during her lifetime, and therefore that the homestead character was not impressed upon the land. No case similar to the one under consideration has been cited in the briefs of counsel, and we have been able to find none; but it seems clear that under our liberal construction of our homestead law the land in controversy must be considered to have been impressed with the homestead character during the life of Linda Bush. Davis v. First State Bank, 65 Okla. 211, 166 Pac. 92. The record shows that the improvements were upon the land and were purchased at the time of the allotment, it being supposed that they were upon the allotment taken by Linda Bush; that from the time of the allotment until shortly before her death it was supposed that the residence, as well as the other improvements, was upon her land. The fact that by mistake and inadvertence, a part of the curtilage, consisting of the actual domicile, was found to be upon the land of another, cannot defeat the intent of the parties constituting the family to make the tract here involved their homestead, and we have reached the conclusion that where improvements, a part of which are situated upon another tract of land not owned by the claimant, were by mistake assumed to be upon the land of the claimant, and they are actually occupied, together with the land claimed as the homestead of the family, his mistake will not defeat the homestead right, but that the tract will be impressed with the homestead character.

Finding no error in the record, the judgment should be affirmed.

By the Court: It is so ordered.