**UHRINA, Gdn., v. MASTAKO, Adm'r.**

No. 14761.—Opinion Filed Sept. 23, 1924.

1. **Appeal and Error—Sufficiency of Evidence—Conclusiveness of Judgment.**

In a civil action, where the parties are not entitled to a trial by jury as a matter of right and where the sufficiency of the evidence is challenged, it is the duty of this court to consider and weigh all the evidence,

and if the judgment of the trial court is not clearly against the weight of the evidence it will be sustained.

## 2. Same—Judgment Sustained.

Evidence in this case examined, and the judgment held not to be clearly against the weight thereof.

(Syllabus by Pinkham, C.)

Commissioners Opinion, Division No. 5.

Error from District Court, Pittsburg County; W. J. Hulsey, Special Judge.

Action by Andrew Uhrina against Frank Mastako. From judgment in favor of defendant, plaintiff brings error. Affirmed.

E. C. Marianelli, for plaintiff in error.

Porter & Fuller, for defendant in error.

Opinion by PINKHAM, C. This is an appeal by the plaintiff in error, Andrew Uhrina, guardian, from a judgment of the district court of Pittsburg county, approving and confirming the final report of Frank Mastako, administrator of the estate of John Petrick, deceased.

The following are the material facts:

On July 19, 1919, the defendant in error was duly appointed adminstrator of said estate; he qualified as administrator and letters of administration were duly issued. Subsequently the defendant in error, as administrator, filed his inventory and appraisement in the county court of Pittsburg county, which final account shows the total amount received of $1,059.92; total amount paid out: $335.02; and the balance due of $723.07.

Thereafter, on June 14, 1921, the county court of Pittsburg county made and entered a final decree adjudicating who were the heirs of said deceased and awarding the sum of $383.85 to the plaintiff in error, Andrew Uhrina, as the duly appointed, qualified, and acting guardian of one John Petrick, a minor son of said deceased.

In the said final decree the county court found:

· That the final report of said administrator filed herein shows a balance with which said administrator is charged as $723.07, from which a deduction should be made of $2.50 for court costs and $52.36 as administrator's fee, which deductions are by the court ordered made, leaving a balance with which administrator should be charged amounting to $668.25, and said final report is by the court approved with that sum charged against administration."

The county court further found "that the final report filed herein shows that on March 3, 1920, the administrator, per court order, sent the widow of said deceased the sum of $100, which should be charged against her share in this distribution" and " that the following persons are entitled to distribution shares in said estate in the following proportions, to wit: Annie Petrick, one-half interest, less $100 mentioned above; and John Petrick, one-half."

It was further ordered by the court:

"That said administrator distribute said share by sending Annie Petrick's share to her in Europe and by paying John Petrick's share to Andrew Uhrina his duly appointed, qualified, and acting guardian, and upon satisfactory proof that said shares have been so distributed said administrator shall be duly discharged and his bondsmen released."

Thereafter the plaintiff in error, Andrew Uhrina, as guardian of said John Petrick, minor, filed on July 20, 1921, in the county court of Pittsburg county, his protest against said final report.

In the said protest Andrew Uhrina states that at the time of the death of said John Petrick he had in the neighborhood of $900 in his house, and that said $900 was taken possession of by the administrator, or members of his family, with the knowledge and consent of the administrator, and that said sum of $900 has not been accounted for in this distribution, and further that the defendant in error, Frank Mastako has not faithfully and honestly discharged his duties as such administrator, and is now withholding from the court certain properties belonging to said John Petrick, deceased, and which should have been reported in this administration.

Thereafter, on the 1st day of August, 1921, there came on for hearing the protest of the plaintiff in error, as guardian of John Petrick minor, against the discharge of Frank Mastako, administrator of said estate, and at the conclusion of said hearing the county court made and entered an order adjudging and decreeing that the protest filed by Andrew Uhrina against the final discharge of Frank Mastako as administrator of this estate "be and the same is hereby dismissed."

Thereafter an appeal was taken by Andrew Uhrina to the district court of Pittsburg county for hearing.

On July 19, 1923, the regular district judge of Pittsburg county entered his disqualification to try said cause and on the same date the Hon. I. P. Keith, a member of the bar of Pittsburg county, was duly chosen and qualified to hear said cause as special judge. After his qualification as special judge said cause was duly heard on the

19th day of Janurary, 1923, and testimony was taken in support of the protest of said Andrew Uhrina, guardian, against the allowance of the final report of defendant in error, Frank Mastako, administrator.

During the examination of one of the witnesses, John Shanta for the contestant, it developed that said special judge had acted as attorney for said witness in filing a protest against the appointment of defendant in error as administrator of said estate, and that when the court recalled the facts, the said special judge entered his disqualification to further try the case.

Thereafter an agreement was entered into between the attorneys of both parties to the effect that the testimony of the witnesses theretofore given prior to the disqualification of the first special judge should be read by the stenographer by whom testimony was taken before the judge agreed upon to further hear the cause and "that both parties agree that said testimony may be considered by said special judge with the same force and effect as if the said witnesses had personally appeared before him."

Thereafter on the 3rd day of February, 1923, by agreement of all parties another member of the bar from Pittsburg county was agreed upon as a special judge to continue the hearing, and the Hon. W. J. Hulsey was agreed upon to try said cause.

The testimony theretofore given before the first special judge was read and considered by said special judge before further proceeding with the hearing of additional witnesses.

At the conclusion of the said hearing the court made and entered the following finding of fact and judgment as follows:

"It is the finding of the court that the contestant has failed to establish the fact that any property came into the hands of the administrator other than what is reported in his final report, either before his appointment or after. Judgment will be in favor of the approval of the final report."

From the said final judgment of the district court the plaintiff in error, as the contestant of said final report, prosecutes this appeal to this court.

It is earnestly contended in the brief of plaintiff in error that the judgment of the trial court is clearly against the weight of the evidence, and therefore it is the duty of this court to consider the whole record, to weigh the evidence, and if after weighing the same judgment is found to be clearly against the weight thereof, to render or cause to be rendered such judgment as should

have been rendered by the trial court; otherwise to sustain the judgment.

This is substantially the rule announced in the case of Turbin. v. Douglas et al., 76 Okla. 78, 183 Pac. 881, in which it is said:

"In a civil action, where the parties are not entitled to a trial by jury as a matter of right and where the sufficiency of the evidence is challenged, it is the duty of this court to consider and weigh all the evidence, and if the judgment of the trial court is not clearly against the weight of the evidence it will be sustained."

This is a case which comes under the rule of causes of equitable cognizance (section 1424, Comp. Stat. 1921.)

The evidence on the part of plaintiff in error was to the effect that prior to his death, John Petrick, who was a coal miner and lived alone in a small house which he rented from the father of defendant in error. had in his possession some Liberty Bonds and War Savings Stamps, certain wearing apparel, and a considerable sum of money.

One of plaintiff's witnesses testified that some five months before his death he saw the money in the possession of the deceased, but did not know just how much, that four days after the death of John Petrick, who was killed in a mine explosion he was at the home of the deceased with a number of persons, including the defendant in error and the defendant in error's father, and that everything in the house had disappeared, that the defendant in error stated to him on that occasion that the only paper he got was a Metropolitan Life Insurance Policy.

Another witness for the plaintiff testified that he was at the home of the deceased the day before his death, and that the deceased showed him money in an envelope which the witness testified he counted and which amounted to $1,000, that he also saw War Stamps and Liberty Bonds, and that the deceased had them in his trunk.

On cross-examination it developed that this witness was present at the hearing of the cause in the county court, but did not testify and did not inform the attorneys for plaintiff in error of the matters testified to by him in the district court.

There is evidence in the record that the deceased shortly before his death moved from Krebs, Okla., to Alderson, adjoining mining camps, in Pittsburg county, and that the deceased did not at that time have enough money to pay the sum of approximately $5 for his transfer card, and that this administrator several months after the death of decedent had to repay this money borrowed

by the deceased for the purpose of paying for the transfer card as shown by a creditor's claim against the estate, and there is further testimony to the effect that the decedent did not make much money because he did not work much of the time.

The testimony on behalf of plaintiff in error as to the presence of the defendant in error at the home of the deceased on the evening following the explosion at which the deceased was killed was positively denied by the defendant in error. The defendant in error testified that at this particular time he was in Alderson, but was at the undertaking establishment in McAlester where the body of defendant in error's brother-in-law was, it appearing that defendant's brother-in-law was killed at the same time and place in same mine explosion with the decedent.

The father of defendant in error stated that deceased was renting from him the house he occupied, that he was at the house of deceased the evening after he was killed in the mine, and that he went over there to take care of and feed the hogs of deceased, after he learned that he was killed, that the defendant in error was not with him that evening, that he went into the house and found on the table some War Savings Stamps and an insurance policy, and that he turned them over to the defendant in error, administrator of the estate of deceased.

Assuming that the testimony of some of plaintiff in error's witnesses is true that the deceased had shown them money, Liberty Bonds, and War Savings Stamps, at different times prior to his death, and that the defendant in error was at the home of deceased on the very day on which he was killed, there is no evidence disclosed by the record even tending to show that this property was taken possession of by the defendant in error, or that he had any knowledge of the existence of such property.

Plaintiff in error concludes in his brief that the overwhelming weight of the evidence disclosed by the record indicates that the deceased had a large sum of money in his home up to the day previous to his death.

Considerable stress is placed upon the circumstance disclosed by the evidence that certain War Savings Stamps belonging to the deceased was not included in the inventory which the defendant in error made on the day of his appointment as administrator.

It appears that the defendant in error took these War Savings Stamps to his attorneys, who prepared the inventory. His attorney testified that the War Savings Stamps were kept in his safe and it was thought best to retain them until they were due. It further appears that the War Savings Stamps were afterward converted into money in the sum of $40.32, and such item appears in the final report of defendant in error.

Nearly all of the witnesses in this case, including the defendant in error, were unable to speak clearly the English language, and their testimony was given largely through an interpreter.

The county judge and the district judge heard the testimony of these witnesses and in both hearings the issues were found in favor of the defendant in error.

From a careful examination of the entire record, we are of the opinion that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.