**KOLB, Ex'r, v. WAGNER.**

No. 16975—Opinion Filed Oct. 19, 1926.

Rehearing Denied Jan. 18, 1927.

1. **Appeal and Error—Review—Sufficiency of Evidence in Nonjury Case.**

In a civil action, where the parties are not entitled to a trial by jury as a matter of right, and where the sufficiency of the evidence is challenged, the Supreme Court will consider and weigh all the evidence, and, if the judgment of the trial court is not clearly against the weight of the evidence, the judgment will be sustained.

2. **Appeal and Error—Appealable Decisions —Order Denying Petition of Distributee of Estate to Strike Item of His Debt from Inventory.**

Where one entitled to participation in the distribution of an estate is charged in the inventory and appraisement of the estate with a debt due the estate, and such distributee files a petition praying the court to strike the item of such debt from the inventory, and alleges such debt has been satisfied, forgiven, or is nonexistent, an order of the county court denying the prayer of the petition affects the substantial rights of such distributee and is an appealable order or judgment under subdivision 8 of section 1410, C. O. S. 1921.

(Syllabus by Ruth. C.)

Commissioners' Opinion, Division No. 3.

Error from Superior Court, Custer County; E. L. Mitchell, Judge.

Action by Katrina Wagner to have stricken from the appraisement of the estate of Jacob Kolb, deceased, an item of $1,300 represented to be due from plaintiff to the estate. Plaintiff appealed from a judgment of the county court refusing to strike the item, and from a judgment of the superior court directing such item stricken, Gotlieb Kolb, executor of the estate, appeals. Affirmed.

Meacham & Meacham, for plaintiff in error.

Owen F. Renegar and Walter S. Mills, for defendant in error.

Opinion by RUTH, C. On May 1, 1923, in the county court of Custer county, Gotlieb Kolb filed a petition for the probate of the will of Jacob Kolb, deceased. The will was duly admitted to probate, Gotlieb Kolb, executor, filed his bond, and there was filed a general inventory and appraisement on July 14, 1923, and under schedule "Bonds, Mortgages, Notes, and Accounts," showing who was indebted to the estate, appears the following entry: "Katie Wagner $1,300 note not found."

The appraised value of the estate was $13,651. Thereafter, the plaintiff, "Katie" Wagner, daughter of deceased, filed her petition in the county court, praying the item of $1,300 be stricken from the appraisement, and alleging the indebtedness did not now exist and no such note was in existence. Upon hearing had, the county court rendered judgment in favor of the executor on February 10, 1925.

On January 19, 1925. the executor filed his final account, showing total receipts of $15,039.65; expenditures of $810.75, leaving $14,228.90 for distribution. In the items of receipt appear notes of Christian Kolb, Pauline Brady, and Kate Wagner, and the statement:

"These notes are being listed as receipts because executor is paying them out of the respective shares of each of the makers; that is, the share of the estate to the credit of each of the makers."

On February 10, 1925, the county court made its order settling accounts and ordering distribution, and ordered the amounts of the notes deducted from the distributive shares of the makers of the notes respectively.

On February 13, 1925, plaintiff filed her notice of appeal from the order "disallowing plaintiff's petition to strike her alleged note from the inventory, and also from the order settling accounts and directing distribution," and perfected her appeal to the district court of Custer county on March 24, 1925, and on motion of the executor, the appeal was transferred to the superior court of Custer county.

The executor filed his motion to dismiss the appeal for that: (1) The court was without jurisdiction to entertain the appeal. (2) The order of distribution was a default order. (3) The order overruling the motion to strike the item of $1,300 was not an appealable order.

Motion to dismiss appeal was overruled, and the executor saved an exception. Executor's demurrer to the evidence of petitioner was overruled and exceptions saved. After full hearing had, the court found: "Katrina Wagner and her husband, Rudolph Wagner, executed the note some years before the death of Jacob Kolb, and before his death, Jacob Kolb made a gift inter vivos of said note to Katrina Wagner, and that the amount of the note should not be charged against the distributive share of Katrina Wagner;" from which judgment the executor appealed, and the cause is now before this court for review upon petition in error and case-made.

The executor presents his appeal upon two

propositions: (1) Judgment was contrary to law and evidence. (2) Trial court was without jurisdiction.

Under section 1424, C. O. S. 1921, this case falls and comes under the rule of causes of equitable cognizance (Uhrina v. Mastako, 100 Okla. 294, 229 Pac. 196), and it is a well-established rule of this court that:

"In a civil action, where the parties are not entitled to a trial by jury as a matter of right, and where the sufficiency of the evidence is challenged, it is the duty of this court to consider and weigh all the evidence, and, if the judgment of the trial court is not clearly against the weight of the evidence, it will be sustained." Uhrina v. Mastako, supra; Turben v. Douglas, 76 Okla. 78, 183 Pac. 881.

It appears from the record that the will of Jacob Kolb was executed May 19, 1922, and Jacob Kolb died May 22, 1923. For the last six months of his life, Jacob Kolb lived in a small house about 20 steps from plaintiff's home; his bed, bedding, etc., being furnished by plaintiff, who took care of him, did his cooking, washing, mending, etc. Prior to the time he went to live in the small house, deceased lived in plaintiff's house, and never lived with any of the other children, except one daughter, whom he visited with about two weeks. Deceased was about 83 years of age when he died. About one year before his death, and the day after he "went to town" and made his will, plaintiff testifies deceased gave her the note of $1,300, because she had taken care of him and was "good to him." Plaintiff had the note in a tin box with other papers (some belonging to deceased) for about one year, when Jacob Kolb asked for his papers, and she handed him the box, and when he found the $1,300 note among them, he came out into the kitchen and handed plaintiff the note, and told her "to put it in the stove and burn it," and she did so in his presence and in the presence of her husband, her son, and daughter. This was on Friday, and on the following Sunday Jacob Kolb died.

Klemidena Froese, daughter of deceased, living at Perry, Okla., testified her father visited her for some weeks, about one year prior to his death, and spoke of wanting to take care of "Katie," this plaintiff, and to "release" her, as "Katie" was not strong and had been good to him, and the other children would never even come to see him except when he sent for them, and they would drive right by his house and never stop. There was other testimony along this line, but it is unnecessary to set the same out. Mrs. Froese, the sister who testified

on behalf of plaintiff, was 49 years of age, and the ages of the sons and daughters ranged from Pauline Brady, 55 years, down to plaintiff, Katrina, who was 30 years of age.

The executor insists as his father paid plaintiff $20 per month for his care and keep, no weight should be given to the testimony of the witnesses relative to the gift of the note and the release of "Katie" from her obligation.

There is no question of Jacob Kolb's mental condition up to the day of his death, he being able to look out for his own business affairs at all times, and there is no evidence or suggestion in the record of undue influence of "fiduciary or confidential relation" that would cast a shadow upon the gift to the daughter who had "treated him so good" during the period when the shadows of the Great Beyond were falling athwart his life.

It is contended that, as plaintiff handed the tin box to her father a few days prior to his death, and the box contained this note, this is evidence of the fact that deceased never did give plaintiff the note and release her from the obligation thereof, but the fact of his taking the note again into his possession was evidence of his intention not to make it a gift inter vivos. In support of this position on the part of the executor, there is cited 20 Cyc. 1209, 1296, 1297, and with the rules there announced, we are in perfect accord. However, 20 Cyc. 1208, lays down the following rule:

"A debt due from the donee to the donor may be forgiven as a gift, and when the transaction is complete,, the debt is extinguished and cannot be enforced afterwards. * * * The usual method of making a gift of a debt is for the donor to cancel and deliver to his obligor the evidences of his indebtedness, thereby indicating a forgiveness thereof, or a destruction thereof by the obligee with intent to release."

28 C. J. 642, announces the following rule:

"If a gift has been fully executed. the title having passed by words of gift, accompanied by the delivery of possession, the return of the property by the donee to the donor for a purpose not inconsistent with the continued ownership of the donee will not render the execution of the gift invalid. This rule has been applied where a note is returned to the donor for the purpose of examination."

And 28 C. J. 622 states as follows:

"A gift inter vivos (among the living) as the name implies, is a gift between the living. It is a contract which takes place by mutual consent of the giver, who divests

himself of the thing given in order to transmit the title of it to the donee gratuitously: and the donee, who accepts and acquires the legal title to it. It operates, if at all, in the donor's lifetime, immediately, and irrevocably. It is a gift executed; no further act of parties, no contingency of death or otherwise, is needed to give it effect."

It may be "the sunset of life gives us mystical lore," and his vision, piercing the veil of the future, could see the contest arising over the debt of his daughter, and in an effort to avoid a legal controversy between his children, he directed the plaintiff to "put the note in the stove before my eyes," as testified to by plaintiff, thinking thus to remove beyond the pale of possibility the question of her indebtedness to his estate. His efforts proved unavailing, and the final adjudication of the rights of the parties must be made by this court. To sustain a gift inter vivos of real or personal property, the evidence must go further than a mere preponderance, and must be clear, explicit, and convincing in support of every element necessary to constitute a valid gift. Lucia v. Schaefer, 109 Okla. 167, 233 Pac. 441; Fouts et al. v. Nance, 55 Okla. 266, 155 Pac. 610; Weitz v. Moulden et al., 109 Okla. 119, 234 Pac. 583; also see 29 Cyc. 1658.

"While the relation of parent and child exists between the parties, this, within itself, is not sufficient to raise a presumption of fraud and undue influence, but when a fiduciary or confidential relation exists between parent and child, in addition to the family relation, under such circumstances, the burden of proving that the transaction was a fair one is upon the donee." Weitz v. Moulden et al., supra.

These are rules founded in wisdom and justice, from which this court has no desire to depart, and after a thorough review of all the evidence, we are of the opinion the judgment of the trial court is reasonably sustained by the evidence, and the judgment will not be reversed upon the ground of insufficiency of the evidence.

The second proposition presented is, that the superior court was without jurisdiction, but we are of opinion this assignment of error is without merit.

The petition of the plaintiff to strike the $1,300 item from the appraisement was filed on July 25, 1924, heard August 20, 1924, and denied on February 10, 1925, the same day and date the order settling the final account and directing distribution was made, and on February 13, 1925, plaintiff gave notice of appeal to the district court, and the appeal was in due time filed in the district court, from which court it was, on motion of the executor, transferred to the superior court.

It is stated in the brief of the executor that:

"It is well settled that no order of the county court is appealable except those named in section 1410, C. O. S. 1921."

The cited section provides:

"An appeal may be taken to the district court from a judgment, decree, or order of the county court.

"Sixth. Settling an account of an executor or administrator or guardian.

"Seventh. Refusing, allowing, or directing the distribution or partition of an estate, or any part thereof, or the payment of a debt, claim, legacy or distributive share.

"Eighth. From any other judgment, decree, or order of the county court in a probate cause, or of the judge thereof, affecting a substantial right."

Counsel does not favor the court with any authority to support his contention, and we do not think any can be found holding that an order of a county court, refusing to strike, as an asset, from the executor's report, a charge against a distributee of decedent's estate, an item charged against such distributee's share, and directing the executor to deduct the contested amount from such distributee's share, does not affect a substantial right of such distributee.

To deprive a distributee of his right of appeal from an order denying him of all or a portion of his distributive share of the estate, would be to constitute the county court a court of last resort in such a case, and this was never contemplated by statutes conferring upon county courts probate jurisdiction.

Belt et al. v. Bush et al., 74 Okla. 94, 176 Pac. 935, was a case wherein a petition was filed, praying the county court to set apart a homestead for the use of the family of the deceased. The county court sustained the petition, and Belt and others appealed to the district court, and thence to this court, when the judgment of the district court was affirmed.

We are therefore of the opinion, and so hold, that the superior court in the instant case had jurisdiction to hear and determine the questions submitted to it on appeal, and finding no error in the record, the judgment of the trial court is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 897, §2867; p. 901, §2870; 2 R. C. L. p. 202; 1 R. C. L. Supp. p. 441; 4 R. C. L. Supp. p. 91; 5 R. C. L. Supp. p. 81. (2) 3 C. J. p. 573, §407.