**TAGGART, Adm'x, v. SNIPES et al.**

No. 25078. Oct. 8, 1935.

Rehearing Denied Nov. 5, 1935.

D. D. Stull and Simons, McKnight, Simons, Mitchell & McKnight, for plaintiff in error.

H. Z. Wedgwood and Jere G. Crowley, for defendants in error.

PER CURIAM. Helen Taggart, administratrix of the estate of Elizabeth E. Lile, deceased, appeals from a judgment of the district court of Garfield county, disallowing her supplemental final account. In it she had asked to be relieved of the obligation

to distribute $1,800, of which she alleged she was forcibly robbed. The administratrix testified that the money had been taken under the following circumstances: It had been withdrawn from a bank in Enid, Okla., and pending distribution had been deposited in the Muskogee post office in her own name. Having received instructions from her attorney, and drawn checks on the Citizens Bank of Muskogee in favor of the distributees, she went to the post office at about 11:00 o'clock a. m., to withdraw the money for the purpose of depositing it in the bank to cover the checks. She drove to the post office in her car, a two-door Dodge sedan, and parked diagonally with the curbing, directly in front of one of the entrances. Her machine was in such a position that it was closer in front to the car on the left than in the rear. She walked to the money order window and cashed her certificate, put the money in her purse, went to the letter drop and mailed the checks. She walked back to the car, entered the left door, put the purse on the floor by her right foot, and looking over her left shoulder to avoid "hubbing" the car on her left, she had backed out three or four feet when she discovered a man in her car. He was crouched on the floor between the front seat and the dashboard, and poking a gun in her side told her not to utter a sound if she did not want to be shot. Pursuant to his directions, she followed a meandering course until they came to a dirt road about two and one-half miles northeast of the city, on which he ordered her to stop. Just prior to this she had noticed in her mirror another car following, which drove past and stopped in front of her automobile. Her assailant, assisted by the confederate who had driven this car, took her money, leaving her bound and gagged, to be rescued two hours later by passersby. Immediately they returned to the police station in Muskogee, but the administratrix did not go inside and report the robbery. Instead, it was reported by members of the rescuing party, whose identity was not brought out at the trial. Apparently, the administratrix made no further attempts to apprehend the robbers.

Upon these facts the trial court held that the administratrix be charged with the money alleged to have been stolen and she was required to account therefor.

The first question raised by this appeal refers to the power of this court to reverse a judgment of the lower court where the sufficiency of the evidence is challenged. It has been repeatedly held by this court that in causes of equitable cognizance, where the sufficiency of the evidence is challenged, it is the duty of this court to consider the whole record, to weigh all the evidence, and if the judgment of the trial court is not clearly against the weight of the evidence, then it must be sustained. However, if the judgment is found to be clearly against the weight of the evidence, then this court shall reverse the judgment of the trial court, and render, or cause to be rendered, such judgment as should have been rendered by the trial court. Cases to this effect are legion, and of those cited in the brief of plaintiff in error we find: Uhrina v. Mastako, 100 Okla. 294, 229 P. 196; Coley v. Dore, 56 Okla. 443, 156 P. 164; Hawkins v. Boynton Land Mining & Investment Co., 59 Okla. 30, 157 P. 753; Serrato v. Hopkins, 113 Okla. 54, 238 P. 479, which support this rule.

Also, in the brief of defendant in error we find: Turben v. Douglas et al., 76 Okla. 78, 183 P. 881, in accord.

The trial in the court below, arising by appeal from the county court, was de novo as prescribed by section 1412, O. S. 1931, and being an action to approve or disallow an account, was a cause of equitable cognizance. Uhrina v. Mastako, supra; In re Connelly's Estate, 79 Mont. 445, 257 P. 418. Therefore, at the outset of our determination of this cause we are governed by the rule stated above.

The plaintiff in error, however, while recognizing this to be the rule, contends that in considering and weighing the evidence this court is bound to consider the testimony of the administratrix as being true, and conclusively establishing the facts as related by her, and that therefore our problem shall be only to determine whether these facts amount to negligence that would impose liability on an administratrix. On the other hand, the defendant in error contends that the trial judge had the right to disbelieve her story, if he saw fit, and as there were no findings of negligence in the decree, it was based upon the court's disbelief of her testimony and not upon negligence alone. We understand the correct rule to be that where the positive testimony of the witness is uncontradicted and unimpeached, whether by other positive testimony or by circumstantial evidence, either intrinsic or extrinsic, and where it is not inherently improbable, either in itself or in connection with other circumstances, or where it does not contain contradictions in itself or with other evidence satisfying the court or jury of its falsity, it cannot be disregarded and must control the decision of

the court or jury. Davis v. Wyskup (1923) 97 Okla. 239, 223 P. 357; Fleming v. Drew, 88 Okla. 160, 212 P. 306.

The court, in the first case noted above, stated the rule as follows:

"There are many cases illustrating the principle that the testimony of a witness, though uncontradicted, is for the triers of facts, whether court or jury, who are not bound thereby.

"A typical illustration of the 'double rule' may be found in Gorman v. Hand Brewing Co., 28 R. I. 180, 66 Atl. 209, when the court in sustaining the jury, who evidently disbelieved one of the defendant's witnesses, said:

" 'We have found no better statement of the principle under consideration than is made by Mitchell, Justice, in Anderson v. Liljengren, 50 Minn. 3, 52 N. W. 219. He says: "The rule undoubtedly is that, where the positive testimony of a witness is uncontradicted and unimpeached, either by other positive testimony or by circumstantial evidence, either intrinsic or extrinsic, it cannot be disregarded, but must control the decision of the court or jury. **But a witness may be contradicted by the facts he states as completely as by direct adverse testimony.** A court or jury is not bound to accept it as true merely because there is no direct testimony contradicting it, where it contains inherent improbabilities or contradictions, which alone, or in connection with other circumstances in evidence, satisfy them of its falsity.' "

" 'Where the witness's own statements create an impression of the improbability of the facts to which he testifies, * * * his evidence may be disregarded.' Beatty v. Beatty, 151 Ky. 547, 152 S. W. 540."

In the trial below, the only evidence introduced material to this controversy was the testimony of the administratrix herself. The balance of the evidence consisted of certain files in the hands of the court clerk, and other testimony relating to the attorney's fee due the attorney for the administratrix.

The testimony of the administratrix was not contradicted except by cross-examination. However, her story, uncontradicted, contains inherent improbabilities and contradictions which we deem sufficient to satisfy the trial court of its falsity. The witness's own testimony creates the impression of improbability of an actual robbery; otherwise, how can it be explained that, although no one knew she was going to the post office to draw out the money in cash, and apparently no one to her knowledge

was watching her, yet, she was chosen as the victim, and after a very circuitous route out of town a companion of her assailant joined them? As she testified that no one followed them, how else could the companion know where to meet them, unless it had been prearranged? The testimony was not positive as to whether the confederate met them at the point of robbery or followed them, but other facts indicate that he met them there. She stated that she first noticed the associate in the mirror just before they stopped. Also, the fact that they did take a circuitous route substantiates this view, for the reason that, with a car following, the indirect route would increase the risk, but if he was to meet them there this would prevent someone from accidentally trailing them to their rendezvous. Also, if a meeting place had not been arranged, the robber would have snatched the purse from the floor of the car and escaped in the waiting machine of his confederate.

Moreover, it seems inherently improbable that the robber could have seen her get the money from the post office window and then proceeded to the car before she got there, for he did not know which automobile was hers. He was a stranger to her. He would have had to see her arrive and park her car, follow her into the post office, see her draw out the money, then rush back to the car and be there when she started to back out. This seems to us to contradict physical facts.

It appears to us likewise inherently improbable and contrary to physical facts that the robber could get into the car unnoticed. Her testimony disclosed that she was a short, fleshy woman, weighing about 254 pounds, and that she walked to her car from the post office, opened the door, climbed in, placed the handbag on the floor by her right foot, and started to back out. From these facts it is clear that a man could not have been crouched on the floor of the front seat of her two-door Dodge sedan, between the seat and the dashboard, when she got in, without being noticed. Also, it was disclosed that she first noticed the robber crouched on the floor of the front seat when the gun pressed into her side, and when the car was only three or four feet away from the curbing, backing out. Therefore, the question is presented: Is it inherently improbable that a man could have opened the door, climbed in, closed the door and crouched on the floor of the front seat, in that space of time, without being noticed? We think it is.

There are other contradictions and omis-

sions in the story of the administratrix which should indicate that her testimony, in connection with other circumstances, is inherently improbable. It was never revealed at the trial how many people were around her in the post office, who might have seen her draw out the money in cash. We cannot explain when the masked robber would have had time to put on his mask unnoticed before getting into her car, remembering that the hour was 11 o'clock a. m., in the city of Muskogee. It appears improbable that she would have to keep her eyes riveted on the car to the left to keep from hubbing it when there was ample room for her to pass between the cars in front, yet the rear of the two cars was even farther apart. It also appears improbable that she would not make some sign of distress at 11 o'clock a. m., or that she could not have untied herself sooner, or at least have commanded the attention of the men working in the field a quarter of a mile away. Also, we cannot help but feel that her indifference toward apprehending the robbers was unnatural.

Considering these discrepancies and the contradictions in the testimony, we are compelled to say that the testimony of the administratrix in itself contains inherent improbabilities and contradictions which are sufficient to satisfy the court of the falsity of her statements about the robbery if the court so believed. Therefore, the rule that her testimony, because uncontradicted, must control the decision of the trial judge, does not apply in this case, and we are not limited to determine only whether the facts stated constitute negligence on the part of the administratrix. Moreover, in deciding this case, we do not feel that we are called upon to discuss the extent of the liability of an administratrix. The judgment of the trial court was a general one. The judge had the opportunity to view the conduct, appearance, and demeanor of the witness, and had the right to give such weight to her testimony, to believe it or disbelieve it, as he saw fit. The examination and analysis of the evidence as disclosed above satisfies us that the judgment was not clearly against the weight of the evidence. Hence, in accordance with the rule noted, the judgment must be affirmed.

The defendant in error has complained of the failure of plaintiff in error to comply with Rules 10 and 26 of this court, in that there were no separate allegations of error or assignments of error. We answer that, there being only one assignment of error, the statement made in the brief of plaintiff in error was sufficient compliance.

The judgment appealed from is affirmed.

The Supreme Court acknowledges the aid of Attorneys John E. Curran, J. B. Coppedge, and R. P. Colley in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Curran and approved by Mr. Coppedge and Mr. Colley, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, PHELPS, and CORN, JJ., concur.