Opinion of the court, by
Judge Hitchcock:
At common law, real estate could not pass by will. By the statute 32 Henry VIII., cap. 1, it is enacted, “ that, ail and every person or persons having, or which shall hereafter have, any manors, lands, tenements, or hereditaments, holden in socage, or in the nature of socage tenures, shall have power to give, dispose of, will, and devise the same, by his last will and testament.” This statute contains no clause of restriction as to the person who might devise. It is general in its terms — “ all and every person or persons.” In giving a construction to it, the courts seem to have been inclined to limit the power of devising to those persons who, by the principles of the common law, were enabled to bind themselves by contract. That doubts existed as to the propriety of this construction, is apparent from the fact that at the very next session of Parliament it was deemed necessary to pass an explanatory act. Section 14 of the 34 and 35 Henry VIII., cap. 5, enacts, “that no wills or testaments made of any manors, lands, tenements, or hereditaments, by any-woman covert, or person within the age of twenty-one years, or by idiots, or by any person of non-sane memory, shall be taken to be good'and effectual in law.”
These statutes being the first made in England, upon the subject of devising real estate, all the decisions which have been made by English courts have been made with reference to them. It is not singular that those decisions should be uniform, denying this right to femes covert. The statutes prohibit such persons-from devising, and the courts would not incline to establish a. principle contrary to both the spirit and the letter of the law. English eases can be of no authority here, unless it first be shown- *59 that the statutes under which those cases were first decided are similar to our own. It can not, however, be matter of surprise that, among the profession, the opinion should prevail that even in our state *a feme covert can not'make a will. We get our ideas from reading English law books, and the books of reports published in our sister states; and without stopping to inquire what change has been made by our own local legislation,xwe adopt as sound law the principles there advanced.
Counsel for defendant say it is holden in New York, Massachusetts, and other states that married women can not dispose of real estate by will. We are aware that such is the law in some of the states, although not in all. But before we can receive the cases cited as authority, we must see the statutes by which the courts were governed. If those statutes are similar to our own, then the* cases decided will be entitled to great consideration.
The case of Osgood v. Breed, 12 Mass. 525, is much relied on by the defendant’s counsel. In that case the Supreme Court of Massachusetts decided that the will of a married woman is void. They say, “ The power of devising is given to every person lawfully seized of any lands, etc., in his or her own right. But a married woman is not so seized. She and her husband are jointly seized in her right.” The peculiar phraseology of the statute is-relied upon by the court as the reason why a married woman may not devise. But the phraseology of our statute is materially different. By the act of February 10, 1810, 8 Ohio Stat. 146, the testator is authorized “to devise all the estate, right, title, interest in possession, reversion, or remainder which he or she hath, or at the time of his or her death shall have, in or to lands, tenements, etc.” This was the statute in force at the time Catherine Pegg* made her will, and at the time of' her decease. No one will deny that a married woman hath an interest in her own land. There being then this difference between the statute of Massachusetts and that of Ohio, the case of Osgood v. Breed can have but little influence in giving a construction to the statute of the latter state.
In the case of West v. West, 10 Serg. & Rawle, it is decided by the Supreme Court- of Pennsylvania that a feme covert can not dispose of her lands by will; and in deciding the case, that court express surprise that any person should ever have thought otherwise. It may be a matter of surprise *if we look to the *60 .statute of Pennsylvania, but no one will doubt the power of the legislature of that or any other independent state to confer such privilege upon a married woman. The first statute in the Northwestern territory on the subject of wills was ado|>ted from Pennsylvania, and took effect October 1, 1795. Ohio L. L. 457. It is presumed that this was the statute under which the case of West v. West, before'referred to, was determined; and if there had been no change in the law by subsequent legislation, that ease would be one in point, and by the authority of which we should feel ourselves bound.
Having made these preliminary remarks, let us now examino the local legislation of Ohio, and ascertain whether it has been such as to make any innovation upon the statutes of England, or •of our sister states. And if) upon such examination, it shall be found that a fair construction of the legislative acts leads to the conclusion that our own legislature have intended to confer the power upon femes covert of devising real estate, it is not for the court to thwart or disappoint that intention. It is our duty to declare, not to make the law.
The ordinance for the government of the territory of the United States, northwest of the river Ohio, Land Laws of Ohio, 252, contains, among others, the following provision : “And until the governor and judges shall adopt laws as herein mentioned, estates in the said territory may be devised or bequeathed by wills, in writing, signed and sealed by him or her, in whom the estate may be (being of full age), and attested by three witnesses.” This ordinance was passed by Congress, on July 13, 1787, and has ever been considered the fundamental law of Ohio, until the adoption of the state constitution. No law upon the subject of wills was adopted by the governor and judges until 1795 ; of course, until •that time, the before-mentioned clause in the ordinance was the law. It will be perceived that there is no restriction as to the •right of devising, excepi that the devisor shall be “ of full age.” Whether it aver became necessary for the territorial courts to give a construction to this provision we know not. Had it been necessary, however, it is but reasonable to suppose that it would have been held, that it did not ^confer the power upon a married woman to make a will. Such decision would have been in conformity with the decision of the courts, and this court would hold the same, upon the same general expressions^
*61 On June 19, 1795, the governor and judges adopted from Pennsylvania “ a law concerning the probate of wills written and nuncupative,” which took effect October 1st, of the same year. This law, however, did not vary from the ordinance as to those persons-who should have power to make wills. It is the only statute upon-the subject, previous to the adoption of the constitution, and is probably similar to the statute of Pennsylvania, under which the-case of West v. West, was decided. It continued in force until June 1, 1805.
Since the organization oí the state government, this subject has been frequently before the legislature. In the short space of-twenty-six years, no less than six general laws, besides a grea-t number of amendatory and supplementary acts have been passed, directing the manner ol executing, proving, and recording wills and codicils.
The first of these was passed on January 5, 1805, to take effect the first day of June then next following. 3 Ohio L. 173. This statute is similar in its general features to that of 1795, and makes no change in the descriptions of persons who may devise.
On February 18,1808, another law was enacted to take effect on the first day of June of that year. 6 Ohio L. 75. The first section points out who may make'a will. It enacts as follows: “Every male person aged twenty-one years or upward, and every female person aged eighteen years and upward, being of sound mind,, shall have power, at his or her will or pleasure, by last will and testament, in writing, to devise all the estates, right, title, and interest in possession, reversion, or remainder, which he or she hath, or ■at the time of his or her death shall have, of, -in, or to lands, tenements, hereditaments,” etc. Upon these general words and expressions there is no restraining clause, nothing from which we-can infer that the legislature intended anything more or less than is expressed. Now I would ask what is meant by the phrase !i every female person of the age of eighteen years *and upward.” I do not ask those alone, who have derived their ideas of the propriety of any law by reading English books, or who would enlarge or restrain a statute of Ohio, so as to make it compare with a statute upon the same subject, although with different phraseology, enacted in New England, Now York, Massachusetts, Pennsylvania, or any other state in the Union ; but I ask any man of ordinary common sense, who desires to arrive at a correct understanding *62 ■of a statute, by giving to the words used by the legislature their ■ordinary and appropriate meaning. The law is made, not for the benefit of this or that profession, or class of men, but for the community at large ; and every statute should receive such construction as is consistent with the common sense of that community. What, then, is the moaning oí the words “ every female person ?” Is not a married woman a person? She is, so far that she .may be punished for her criminal acts, and why may she not be, so far as to make a will? She labors, it is true, under many disabilities, but it is within the power of the legislature to remove those disabilities, and when this power is exercised, it is not the province ■oí this court to correct the procedure. If a manned woman is a “ female person,” she is authorized by the act of 1808 to make a will, and that she is thus authorized, seems to be clear beyond a ■doubt, to a majority of the court.
It has been argued by the counsel for the defendant, that to give this construction to the statute would be fraught with danger. We are aware of the disabilities under which a married woman labors at common law. We are aware that to some intents she is esteemed as dead in law; that her contracts are not 'obligatory upon her ; that she is not answerable even for crimes committed in the company of her husband. Still, notwithstanding all these disabilities, she may, even in England, convey her lands by fine, and in our own state by deed, if executed by and with her husband. And we do not readily perceive that there is any more danger to be apprehended from1 permitting a feme covert to transfer her land by will, than there is in empowering her to convey by deed. '■
The act of February 10, 1810, was the law in force at the time when Catherine Pegg made her will. 8 Ohio L. *146. The first section of this act is the same with the first section of the act of 1808. A majority of the court are of the opinion that at the death of Catherine Pegg, the lot of land in controversy, passed by the will of the said Catherine to Mary Ann Pegg, and that the law arising upon the agreed statement of facts is with the plaintiffs.
Whether Benjamin Pegg could have his courtesy in the premises we do not now undertake to deeidq, that question not being made upon the question presented. Nor does the circumstance that the wife was living, separate and apart from her husband, *63 .have any influence with the court. We go upon the ground that, by the statutes of February 10, 1810, a married woman had an unquestionable right to make a will.
Judge Collet dissented.