In re CAROTHERS' ESTATE.
CAROTHERS et al. v.
CAROTHERS et al.

No. 31691. April 2, 1946.

167 P. 2d 899.

Hollis Arnett, of Mangum, for appellants.

H. M. Thacker, of Mangum, for appellees.

OSBORN, J. This is an appeal by Daisy Carothers, Maud Morris, Ruby Morris, May Morris, and Nona Roberts, hereinafter designated appellants, from a judgment of the district court of Greer county, affirming a decree of distribution by the county court of Greer county in the estate of Joseph W. Carothers, deceased, which decree upheld the will of Joseph W. Carothers and vested title to 2/3rds of his estate, after the payment of certain bequests, in George B. Carothers. George B. Carothers and Tillman Terry, executors of the last will and testament of Joseph W. Carothers, and George B. Carothers, individually, are appellees.

The facts are undisputed. On August 12, 1939, Joseph W. Carothers made a will devising to his wife, Daisy Carothers, all of the rents, revenues, and income from all property owned by him at the time of his death, giving to his daughters, May Morris, Maud Morris, Ruby Morris, and Nona Roberts, and to his two granddaughters, Ethel Caroth-

ers and Pearl Carothers, the sum of $100 each, and devising to his son, George B. Carothers, the remainder of his estate, subject to the restriction that George B. Carothers should not sell, mortgage, or otherwise dispose of any real estate left by the testator for a period of 20 years following the testator's death.

Joseph W. Carothers died on November 25, 1941. At the time of his death he and his wife, Daisy Carothers, resided upon the northeast quarter of section 29, township 7 north, range 21 west in Greer county, which was his homestead. Upon his death the homestead was set apart to his widow, Daisy Carothers. The widow and Maud Morris, one of the daughters of Joseph W. Carothers, deceased, filed a contest of the will, but the will was admitted to probate over their protest, and thereafter Daisy Carothers elected to take under the law. Final account and petition for distribution was filed by the executors, and appellants filed a petition for distribution under the laws of succession, which latter petition was by the court denied, and the property was distributed 1/3rd to the widow and 2/3rds under the will to George B. Carothers. This decree was affirmed by the district court on appeal. The distribution of 2/3rds of the homestead to George B. Carothers was by the county court expressly made subject to the rights of Daisy Carothers, as the surviving wife of Joseph W. Carothers, deceased.

The sole question presented is whether the will of Joseph W. Carothers, deceased, is absolutely void as to the above described lands and of no force and effect by reason of the provisions of 84 O. S. 1941, § 44. That section reads as follows:

"Every estate in property may be disposed of by will; provided, however, that a will shall be subservient to any antenuptial marriage contract in writing; but no spouse shall bequeath or devise away from the other so much of the estate of the testator that the other spouse would receive less in value than would be obtained through succession by law; provided, however, that of the property not acquired by joint industry during coverture the testator be not required to devise or bequeath more than one half thereof in value to the surviving spouse; provided further, that no person shall by will dispose of property which could not be by the testator alienated, encumbered or conveyed while living, except that the homestead may be devised by one spouse to the other."

Appellants urge that under this statute Joseph W. Carothers, deceased, could not lawfully devise his homestead to any person except his widow, Daisy Carothers; that therefore the will was a nullity, and that the county court should have distributed the property under the laws of intestate succession to the legal heirs of Joseph W. Carothers, deceased, without regard to the provisions of the will. They contend, in effect, that by the last proviso in the statute, supra, with the exception thereto annexed, the Legislature intended to and did absolutely prohibit the devise of the homestead by the spouse holding title thereto to any person except to the surviving spouse. We think this contention erroneous, and that the judgment of the district court affirming the judgment of the county court was correct.

The amended section above quoted was originally adopted from the Compiled Laws of Dakota of 1887, being section 3308 thereof. As originally adopted it read as follows:

"Every estate in real or personal property to which heirs, husband, widow, or next of kin might succeed may be disposed of by will."

In 1909 it was amended to read as follows:

"Every estate and interest in real or personal property to which heirs, husband, widow, or next of kin might succeed, may be disposed of by will; Provided, that no marriage contract in writing has been entered into between the parties; no man while married shall bequeath more than two-thirds of his

property away from his wife, nor shall any woman while married bequeath more than two-thirds of her property away from her husband; Provided, further, that no person who is prevented by law from alienating, conveying or encumbering real property while living shall be allowed to bequeath same by will." Section 8341, R. L. 1910.

In 1925 it was again amended and appears in the 1931 Statutes as section 1539. As so amended, the last proviso, which is the part material to the controversy in the instant case, was changed to read as follows:

". . . Provided, further, that no person shall by will dispose of property which could not be by the testator alienated, encumbered or conveyed while living, except that the homestead may be devised by one spouse to the other."

It was enacted in its present form, as first above quoted, in 1941, and as so enacted was in force and effect at the time of the death of J. W. Carothers. Thus it appears that the last proviso of said section in substance existed in the statute and has been a part thereof since 1909, the words "except that the homestead may be devised by one spouse to the other" being added in 1925.

This court has in numerous cases, involving varying sets of fact, discussed the nature of the homestead as created by our Constitution and statutes. We have held in a number of cases that the homestead, as it exists in this state, is a creature of the Constitution and statutes, nothing like it being known at common law. Pettis v. Johnston, 78 Okla. 277, 190 P. 681; In re Musselman's Estate, 167 Okla. 560, 31 P. 2d 142; Hembree v. Magnolia Petroleum Co., 176 Okla. 524, 56 P. 2d 851; Karbs v. Bouse, 195 Okla. 23, 154 P. 2d 968. We have further held that the constitutional and statutory provisions were enacted for the purpose of protecting the entire family. Brooks v. Butler, 184 Okla. 414, 87 P. 2d 1092; Pettis v. Johnston, supra. The constitutional provisions are set forth in article 12, secs. 1, 2, and 3, of the Constitution,

and are designed to protect the family while both husband and wife are living, regardless of which one of them is vested with title to the land occupied as the homestead. Article 12, sec. 1, defines the property of which the homestead may consist. Section 2 provides:

"The homestead of the family shall be, and is hereby protected from forced sale for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon; nor shall the owner, if married, *sell* the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law; Provided, nothing in this article shall prohibit any person from mortgaging his homestead, the spouse, if any, joining therein; nor prevent the sale thereof on foreclosure to satisfy any such mortgage."

16 O. S. 1941 § 4 provides that no deed, mortgage, or contract relating to the homestead exempt by law, except a lease for a period not exceeding one year, shall be valid unless in writing and subscribed by both husband and wife, where both are living and not divorced or legally separated.

16 O. S. 1941 § 6 permits the husband or wife, where the other spouse has voluntarily abandoned him or her for a period of one year, or takes up a residence in another state, to convey, mortgage, or make contracts relating to the homestead without joinder of the absent spouse.

16 O. S. 1941 §§ 7, 8, 9, and 10 permit the husband or wife of an insane spouse to sell, convey, or mortgage the homestead.

Under these constitutional and statutory provisions we have held that any attempted conveyance or mortgage of the homestead by one spouse, where the other is not insane and has not deserted the other spouse for a period of a year, or taken up a residence in another state, is absolutely void and conveys no interest in the homestead. Fetterman

v. Franklin, 88 Okla. 1, 211 P. 403; Baker v. Grayson, 86 Okla. 159, 207 P. 301; Barnett v. Sanders, 121 Okla. 14, 247 P. 55; Bishoff v. Myers, 101 Okla. 36, 223 P. 165; Standard Savings & Loan Ass'n v. Acton, 178 Okla. 400, 63 P. 2d 15; Montgomery v. Wise, 179 Okla. 247, 62 P. 2d 647.

In Wilson v. Clark, 97 Okla. 299, 223 P. 668; Thomas v. James, 84 Okla. 91, 202 P. 499, and Hawkins v. Corbit, 83 Okla. 275, 201 P. 649, we held that both husband and wife must join in the same instrument, and that an attempted conveyance by separate and distinct deeds, one executed by the husband and the other by the wife, was insufficient to convey any right in the homestead.

The above cases and numerous others indicate that this court has at all times been zealous to enforce the constitutional provisions and the statutes in order to safeguard the family in its occupancy of the homestead. They all have reference to the constitutional homestead as distinguished from the statutory or probate homestead. The constitutional homestead is the land itself which is occupied by the family as a home. In re Gardner's Estate, 122 Okla. 26, 250 P. 490; Finerty v. First Natl. Bank, 92 Okla. 102, 218 P. 859.

The statutory or probate homestead is distinguished from the constitutional homestead. As said in Re Gardner's Estate, supra:

"Thus it is clear that the right to possess and occupy the homestead is a special individual right given to a surviving husband or wife, and is separate and distinct from the exemption right given to the head of a family as a protection against creditors. The policy of thus protecting this individual right to a survivor is one of long standing, and has been recognized and consistently upheld by this court." (Citing cases.)

In Ringer v. Byrne, 183 Okla. 46, 80 P. 2d 212, we called attention to the distinction between the constitutional homestead and the probate homestead. The probate homestead originates by

force of statute, 58 O. S. 1941 § 311. It requires no order of the probate court to bring it into being or to give it effect. Kimberlin v. Anthony, 124 Okla. 170, 254 P. 1; Belt v. Bush, 74 Okla. 94, 176 P. 935; Moore v. Rick, 186 Okla. 351, 97 P. 2d 884; Ringer v. Byrne, supra. Occupancy by the surviving spouse and family or by the surviving spouse alone, if there are no children, is the only requirement. Ringer v. Byrne, supra; Hembree v. Magnolia Petroleum Co., supra. As stated in the latter case, it is a distinct interest from title. The right to occupy is given by the statute and requires no order of court to vitalize it and give it effect. It may be lost only by abandonment, and upon the death of the surviving spouse, if she still occupies the same, the minor children have the right to continue to use and occupy the same until they reach majority. In Ringer v. Byrne, supra, we held that where the probate homestead attached and the surviving spouse thereafter died, the title to the land vested in her adult son, free and clear of any liability for the debts of the husband. This was also the holding in First Natl. Bank v. Scott, 178 Okla. 175, 62 P. 2d 511. In Shawnee Natl. Bank v. Van Zant, 84 Okla. 107, 202 P. 285, and in Hogan v. Reiker, 86 Okla. 55, 206 P. 203, we held that the probate homestead, occupied by the widow and minor children, was not affected by the execution of a mortgage on the individual interest of the widow in the land, and that such mortgage could be foreclosed, but not so as to disturb the occupancy of the homestead by the minors during their minority.

In Re Cole's Estate, 85 Okla. 69, 205 P. 172, we said:

"The right of the surviving spouse to continue to possess and occupy the homestead *is an individual right and not an interest in the testator's property. This right is not subject to testamentary disposition, and does not pass under the decedent's will.* Neither is the surviving spouse deprived of this right by virtue of an antenuptial con-

tract which provides that the property of each shall remain their separate property and that the other shall not have any interest therein."

In Scott v. Scott, 131 Okla. 144, 268 P. 245, we said:

"In addition to this one-third interest, she had the right to use and occupy the homestead during her lifetime. Section 1224, C.O.S. 1921. *This right was hers individually and not an interest in the testator's property,* and, therefore, not subject to testamentary disposition. Bacus v. Burns, 48 Okla. 285, 149 P. 1115; In re Cole's Estate, 85 Okla. 69, 205 P. 172; Pennington v. Woodner-McGaugh, 54 Okla. 110, 153 P. 875. . . ."

In Belt v. Bush, supra, and in Re Gardner's Estate, supra, we held that where the probate homestead had once attached, the sale of reversionary interests by the heirs did not affect the right of the surviving spouse to continue to occupy the homestead.

From the above cases it plainly appears that once the probate homestead has attached by the continued occupancy of the constitutional homestead by the surviving spouse, whether with or without minor children, it cannot be taken from such spouse, or upon the death of such spouse, from the minor children, if any there are, except for the obligations specified in article 12, section 2 of the Constitution. It may be lost only by abandonment. Mathews v. Sniggs, 75 Okla. 108, 182 P. 703; Lusk v. Carter Oil Co., 172 Okla. 508, 53 P. 2d 656; Hembree v. Magnolia Petroleum Co., supra.

In Bacus v. Burns, supra; In re Cole's Estate, supra; Hogan v. Reiker, supra; and Roberson v. Hurst, 80 Okla. 115, 190 P. 402, all decided prior to 1925, we held that the owner of the homestead could, under the then existing law (sec. 8341, R. L. 1910), dispose of the homestead by will, subject to the use and occupancy thereof by the surviving spouse and minor children, if any.

In Bacus v. Burns, supra, the will devised 4/10ths of the estate to four named children of the testator, 6/10ths of the estate to the widow for life, with remainder to six other children of the testator. The will was made in Kansas and the wife consented in writing thereto. We held that the written consent was merely an election by the widow to take under the terms of the will, but that the homestead could not be sold to carry out the provisions of the will so long as the same was used and occupied by the surviving widow as a homestead, unless it was sold subject to her right to so use and occupy.

In Re Cole's Estate, supra, the husband and wife by antenuptial agreement agreed that neither should have any interest in the separate property of the other. The homestead was the separate property of the wife. The wife died first and by will left 1/3rd of her property to her husband for life, with remainder to her brothers and sisters, and devised the remaining 2/3rds of her estate to certain nephews and nieces. The court upheld the antenuptial agreement and the will insofar as it failed to give the husband 1/3rd of the property absolutely, but said:

"Neither the antenuptial contract nor the will deprived the surviving spouse of the right to continue to possess and occupy the homestead as his home. The effect of section 6328, supra (58 O. S. 1941, § 311) is, not that it makes the will void, but it postpones to a subsequent time the right of the devisee under the will to possess and occupy the homestead. . . ."

In Hogan v. Reiker, supra, the will devised ½ of the testator's property to his wife and the other ½ to his three children, but provided that the homestead be held intact and not divided or sold or conveyed until after the youngest child reached majority. The widow remarried and thereafter, joined by her second husband, made a mortgage upon her ½ interest in the property. In an action brought to foreclose the mortgage we held that the mortgage was

valid as to the ½ interest devised to the wife, but that it could not be foreclosed and her ½ interest in the property sold until after the youngest child became 21 years of age.

In Roberson v. Hurst, supra, the husband devised his real estate to his wife and her three minor children and provided further that the wife should have full control and management of the estate and full power to sell any part thereof if she considered such action to be for the best interest of herself and her minor children. The widow thereafter mortgaged the property and an action was brought to foreclose the mortgage. We held that the effect of the will giving the widow the right to have full control of the property and sell any part of the same if she deemed best, in effect vested her with an estate in fee, subject to the contingent remainder in the minor children; that therefore she could execute a valid mortgage upon the homestead and that the same could be foreclosed. In that case we said:

". . . It is only the spouse of the owner of land invested with the homestead character who is required by statute to join in the conveyance thereof in order to make the same valid; in other words, although the land thus impressed is the homestead of the family, the family is not required to join in a conveyance thereof by the owner."

In Re Gardner's Estate, supra (decided February 23, 1926), the will disposed of testator's property to his wife and other devisees and the widow elected to take under the law and asked that certain property used as the family homestead, but upon which was also located a business building, be set apart to her as her homestead. Two daughters of the testator by a former wife contested the application for the reason that the business building on the lot was not properly a part of the homestead. We held that the whole property constituted the homestead, and that upon the death of the testator the widow was entitled to occupy it regardless of the claims of other heirs or devisees.

In Barnett v. Love, 118 Okla. 31, 248 P. 645 (decided January 19, 1926), the homestead was part of the allotment of the wife. She died leaving a will by which she devised her property to her husband and two of her children. In that case we quoted 84 O. S. 1941 § 44, as it existed prior to the 1925 amendment, and held that under it Grace Love, the wife, could devise 2/3rds of her property to her heirs other than her husband, subject to the right of the husband to use and occupy the homestead as long as he maintained his homestead thereon.

In Scott v. Scott, 131 Okla. 144, 268 P. 245 (decided June 19, 1928), the husband bequeathed all his property to his three nephews subject to a life estate in favor of his wife. Thereafter he deeded the homestead to his wife. Upon his death his devisees brought an action to cancel the deed and commenced proceedings to probate the will. In an amended petition in the action to cancel the deed, it was pleaded that the widow and the executor of the last will had entered into a contract by which the widow had agreed that the deed might be canceled and that she would take under the will. The widow alleged that this contract was obtained by fraud and that she had never understood its full effect. The trial court canceled the deed and held the contract valid. We held that the testator had the right to devise the homestead, but held that the contract deprived defendant of her homestead interest in the property and of her 1/3rd interest in fee simple therein, and set the contract aside.

In Gassin v. McJunkin, 173 Okla. 210, 48 P. 2d 320 (decided June 4, 1935), the husband devised all his property to his wife, making no provision for his children and not mentioning them; the property was distributed to the widow, who occupied the homestead until the time of her death, leaving a will by which she devised the homestead to four of the children, leaving a fifth child, Andrew Gassin, the sum of $1. The four children brought suit to quiet

their title against Andrew Gassin, if living or dead, and his daughter, Mrs. McJunkin, contested the action, claiming an interest as heir through her father. We held in that case that the owner of the homestead had the right under our statutes to dispose of the same by will, subject to the rights of the surviving spouse and children to use and occupy the same, but that Mrs. McJunkin had an interest in the property because of defects in the probate proceedings. All of the above cases dealt with the statute prior to the 1925 amendment.

In Hicks v. Jeffress, 178 Okla. 109, 61 P. 2d 1079, the husband·devised to his wife that part of his estate which she would take under the law of succession, and after certain bequests of money to two of his daughters, devised all the residue of his estate to Lena Jeffress. The widow contested distribution under the will, claiming that ½ of the property was hers by virtue of a partnership arrangement between her and her husband, and that by statute she was entitled to the other ½ as property jointly acquired by the husband wife during coverture. We held that the decree distributing the property under the will was valid, although it did not in terms reserve to the widow the right to occupy and possess the homestead, for the reason that the record showed that she was occupying the homestead and no one contested her right to do so.

Our holdings in the above cases may be summed up in the statement that the provisions of our Constitution and statutes relating to the sale, conveyance, or encumbrance of the homestead do not prevent the devise thereof, but any such devise is subject to the homestead rights of the surviving spouse and children. This is in accord with the holding of the Supreme Court of Kansas under similar provisions. Martindale v. Smith, 31 Kan. 270, 1 P. 569; Vining v. Willis, 40 Kan. 609, 20 P. 232; Postlethwaite v. Edson, 102 Kan. 104, 171 P. 769; Hicks v. Sage, 104 Kan. 723, 180 P. 780; Postlethwaite v. Edson, 106

Kan. 354, 187 P. 688; In re Casey's Estate, 156 Kan. 590, 134 P. 2d 665.

In Vining v. Willis, supra, in holding that disposal of property by will was. not an "alienation" within the meaning of the constitutional provision that. a homestead "shall not be alienated. without the joint consent of husband' and wife, when that relation exists," the court said:

". . . A will never divests the owner of his property, or any interest therein. No interest passes by the will to the intended devisee,—nothing that he can sell or transfer or incumber; nothing that will pass from him to heirs, or that he can devise or bequeath,—and the will may be revoked by the testator immediately after its execution, or at any time afterwards, and before his death. A person might execute a thousand wills for the same property, yet no one of such wills would transfer anything; but when the testator should die, the devisee mentioned in the last will executed would, under and by virtue of the statutes, take the property. It would not be the will, however, but death, that would take the property from the testator; and it would be death, the statutes, and the will, all operating together that would confer the property upon the devisee."

It is to be noted that our constitutional provision uses the word "sell" instead of "alienate" as in the Kansas statute. The previous holdings of the court embrace the theory that the constitutional homestead was not inalienable by the owner, although in order to effect a sale of the land it was necessary that the spouse of the owner join in the conveyance. It would seem, therefore, that the construction which we have given, and which has been relied upon for many years by the bench, the bar, and the people of the state, has. ripened into a well-known rule of property which should not be overthrown unless the statute compels. The last restrictive proviso of the statute having been construed as not preventing a divise of the homestead, the exception to the proviso: "Except that the homestead may be devised by one spouse to

the other," is a grant of power, taking all inalienable land which could not be devised out of the statute and authorizing one spouse to devise to the other spouse any such inalienable land occupied as a constitutional homestead. Should the husband own land in fee simple, but with a restriction against alienation or encumbrance during his lifetime, under the proviso he would be without power to devise the same, but under the exception to the proviso, if he occupied said lands as the homestead of himself and wife, the statute, by virtue of the exception, gives him express authority to devise said inalienable lands to his wife.

While the right to make a will is governed by statute, said right was so anciently granted that statutes restricting the right will be strictly construed. If the Legislature had intended to prevent the devise of the homestead, knowing, as it is presumed to know, the several constructions of our constitutional and statutory provisions approving the making of a will devising the same, it could and would have used clearer and more explicit language to accomplish the restriction of such power. It is clear from what we have heretofore said that upon the death of the spouse in whom title to the homestead is vested, and the coming into existence of the probate homestead, the homestead rights of the surviving spouse are equally unaffected, whether the owner disposes of the land itself by will, or whether, dying without a will, the title thereto vests in his heirs by operation of the laws of succession. In either case, the title of the heirs or devisees is subject to the rights of the surviving spouse and no action on their part can in any wise affect those rights.

If, as contended by appellants, the husband is without power to devise the title to his homestead to anyone other than his wife, if living, then we are presented with the absurd situation that in the case of a father with adult and minor children, whose adult children may have long since abandoned the old home and fireside and have sought and found security and financial independence for themselves, but whose minor children are still helpless and still within the security of the home nest—such father is debarred from protecting his helpless babes by devising any portion of the title of the homestead to them. Such an absurdity is the prerogative of the Legislature, but the courts should not countenance it unless such result arises from specific, direct, and unmistakable language. Such unjust consequences should not be arrived at by innuendo or specious reasoning, or by technical rules of construction.

The action of the court in permitting the widow to make an election to take under the laws of succession and distributing the remainder of the property under the terms of the will was therefore correct.

Affirmed.

GIBSON, C.J., and BAYLESS, CORN, DAVISON, and ARNOLD, JJ., concur. HURST, V.C.J., and RILEY and WELCH, JJ., dissent.

RILEY, J. (dissenting). The issue involved is whether testamentary disposition, noneffective against the surviving spouse who elects to take under the law, may be made to someone other than the spouse so as to devise a two-thirds interest in the remainder of real property constituting the homestead.

Joseph W. Carothers died testate November 25, 1941, seized and possessed of an estate consisting of a quarter section of land in Greer county, comprising the family homestead, and personal property bequeathed in part and in the amount of $100 each to four daughters and two grandchildren. By will, dated August 12, 1939, deceased sought to devise the land comprising the homestead, limited to a life estate, to his wife, Daisy Carothers, with remainder to his son, George B. Carothers.

The will was admitted to probate. The widow renounced the will and elected to take under the law of suc-

cession and to exercise her right to use and occupy the homestead.

The final account of executors was approved and it was ordered that distribution be made according to the devise and bequest except as modified by the widow's election to take under the law of succession. Thereby the legacies of $100 each were ordered to be paid and residue of the estate was ordered to be distributed one-third to Daisy Carothers, widow, her heirs and assigns, and two-thirds to George B. Carothers, his heirs and assigns, subject, however, to the homestead right of Daisy Carothers, or, more specifically, subject to her right to use and occupy the homestead.

The widow's and daughters' appeal to the district court resulted in affirmance of the decree and an appeal to this court.

The practice of conveying property by testamentary disposition, although of great antiquity, is neither a natural, an inalienable, inherent, nor fundamental right guaranteed by Constitution. It is a mere privilege. In re Emerson's Estate, 191 Iowa, 900, 183 N. W. 327; 63 A.L.R. 1086; Alexander on Wills, vol. 1, p. 2. Blackstone says that it is the result of the social life of man and is governed by laws which he has enacted. 2 Blackstone Comm. 12.

The right of succession, the result of a long established custom, is of earlier origin and allied to the laws of nature. 2 Blackstone Comm. 12.

The statutory privilege of testamentary disposition (the law of wills) allows disregard of the claim by succession of those naturally dependent upon the testator and to whom he is bound by blood and principles of love and duty.

Originally, with Anglo-Saxons, the family was the unit of social life. It was governed by the patriarch who possessed the property as a trustee for his descendants and kindred. The family was the corporation with right of succession. But with the development of so-called civilization, a mere cultivated society, the family has been replaced by the tribe, the house, the corporate state. The ties theretofore binding the few have been expanded to encompass the many. The multiplicity of obligations brought on by the advent and ambition of the corporate state may not be fulfilled in the span of a mere lifetime nor under the laws of succession, but only by disposition and management of property after death.[1] Carothers, by the devise of the will, sought to avoid the laws of succession and to inhibit the encumbrance or sale of real property owned by him, until 20 years after his death.

The law of succession is predicated upon the conception that the family or clan, and not the individual, is a unit of ownership; and although the power of the head of the unit may be that of an absolute despot, even in his lifetime the alienation of the family property without the consent of the family is beyond his power. Under the law of succession, death no more affects title of family property than death of a member of a corporation, under modern law, affects title of corporately owner property. A new head must succeed or be elected but title to family property remains just where it was before death of the head of the family, that is, in the family as a legal unit.

The homestead has this significance and the property right in it is predicated upon the conception of family and community property. The homestead does not consist merely of the right to use and occupy because the Constitution, section 1, art. 12, defines a homestead as consisting of land, and by section 2, art. 12, Constitution, sale of the homestead is inhibited by one spouse while married and in esse. The stat-

---

[1] The idea of the will presupposes the privilege of disposition of part or all of testator's property in such a way that after death the property will pass to persons other than those who would take under the general laws of succession. Page on Wills, vol. 1, ch. 1, para. 1.

ute, 84 O.S. 1941 § 44, inhibits testamentary disposition by any person (singular) of any property which could not be conveyed by that person in his lifetime. The homestead is within that class of property which may not be singularly conveyed and as such no testamentary disposition may be made of a homestead unless within the exceptions such as provided by amendment to the statute in 1925, restricting devise of the homestead to that of one spouse to the other.

The error of the court's view in Barnett v. Love, 118 Okla. 31, 248 P. 645, that the homestead consists merely of the right of use and occupancy and not of the land itself is shown not only by the words of the Constitution, supra, but as well by the court's decision holding that even an oil and gas lease, which in no way may interfere with the use and occupancy of the homestead, is invalid unless joined in by both husband and wife. Farmers Union Co-Op. Royalty Co. v. Adams, 182 Okla. 245, 77 P. 2d 68.[2] Moreover, by 58 O.S. 1941 § 311, the survivor may continue to possess and occupy the whole homestead, which shall not in any event be subject to administration proceedings until it is otherwise disposed of according to law. Pioneer Mortgage Co. v. Carter, 84 Okla. 85, 202 P. 513; Moore v. Rick, 186 Okla. 351, 87 P. 2d 1093. Then, too, the right of use and occupancy is in fact and law more than a mere privilege; it is an estate in land— for what is property but the use thereof? The homestead may not be conveyed by testamentary disposition unless within the exception provided, 84 O.S. 1941 § 44, "The homestead may be devised by one spouse to the other." In Belt v. Bush, 74 Okla. 94, 176 P.

935, it was held that the conveyance of the heirs at law, other than the spouse, there being no children, did not dispose of the homestead, they having no interest in it, and that to hold otherwise would wipe out the right of a surviving spouse.

Prior to the Norman conquest, land, as such, was subject to testamentary disposition. Nevertheless, the privilege or right was limited as to family claims. Irwin v. Rogers, 91 Wash. 284; 57 A.L.R. 601; Baker v. Chastang's Heirs, 18 Ala. 417; In re Garland's Will, 160 N. C. 555, 76 S. E. 486.

The right or privilege of testamentary disposition disappeared altogether during the feudal period, Allen v. Little, 5 Ohio 65, because under feudal tenure land could not be alienated without the consent of the lord. In re Fox Will, 52 N. Y. 530, 11 Am. Rep. 751; 24 L. Ed. 192. Under the common law of England, no lands or tenements were devisable. Newlin v. Freeman, 23 N. C. 514; 2 Blackstone Comm. 491; 68 C. J. 414.

Every sovereign state, for its own security and in keeping with its dignity and independence, may regulate or limit or defeat the devise of real property within its borders. Phillips v. Phillips, 213 Ala. 27, 104 So. 234.

By provision of statute in Oklahoma, 84 O.S. 1941 § 44, as to the homestead, the privilege of testamentary disposition is first denied. "No person shall by will dispose of property which could not be by the testator alienated, encumbered, or conveyed while living," and then by amendment limited, "except that the homestead may be devised by one spouse to the other."

As to disposition, alienation, or conveyance of the homestead while living, the Constitution (sec. 2, art. 12) provides: "Nor shall the owner, if married, sell the homestead without the consent of his or her spouse." A sale is a transfer of the absolute or general property in a thing for a price in money. Sale is the equivalent of disposition,

---

[2] In Barnett v. Love, supra, Grace Love, wife of Richard Love, by will devised and bequeathed all of the property of which she died seized and possessed, to Richard Love, her husband, and to Minerva Love and Polly Barnett, share and share alike. It was held that the will passed title to the land constituting the homestead to the three devisees, subject to the homestead right of Richard Love.

alienation, and conveyance. 16 O. S. 1941 § 4 requires, for the validity of an instrument (deed, mortgage, or contract) conveying, alienating, or disposing of the homestead, a writing subscribed by both husband and wife.

A will is a conveyance of a title to land, the same as a deed, the first to take effect after death, the other to take effect, upon delivery, instanter. Barnett v. Love, supra. So that "disposition by will constitutes an alienation." How then may a testator, by his act alone, accomplish by testamentary disposition that which he could not, while living, accomplish? The statute and the Constitution answer that he cannot. Does the negation called death create power? We think not. It has many times been held that any attempted alienation or encumbrance by the owner of land comprising the homestead, without the consent of the other spouse, is void. Cherokee Natl. Bank v. Riley, 56 Okla. 133, 155 P. 1140; Davis v. First State Bank, 65 Okla. 211, 166 P. 92; Elliott v. Bond, 72 Okla. 8, 176 P. 242; Pettis v. Johnston, 78 Okla. 277, 190 P. 681; Shanks v. Norton, 79 Okla. 93, 191 P. 170; Sannon v. Potter, 83 Okla. 66, 200 P. 860; Francen v. Oklahoma Star Oil Co., 80 Okla. 103, 194 P. 193; Hawkins v. Corbit, 83 Okla. 275, 201 P. 649; Long v. Talley, 84 Okla. 38, 201 P. 990; Baker v. Grayson, 83 Okla. 159, 207 P. 301; Fletcher v. Popejoy, 87 Okla. 185, 209 P. 746; Fetterman v. Franklin, 88 Okla. 1, 211 P. 403; Armstrong v. Independent Oil & Gas Co., 93 Okla. 231, 219 P. 353; Thomason v. Martin, 97 Okla. 17, 222 P. 511; Lehman v. Tucker, 176 Okla. 286, 55 P. 2d 62; Standard Sav. & Loan Ass'n v. Acton, 178 Okla. 400, 63 P. 2d 15; Montgomery v. Wise, 179 Okla. 247, 62 P. 2d 647.

It is a contradiction in terms to say that the owner of the homestead may not convey by deed and then to say he may convey by will. Barnett v. Love, supra.

A homestead is not a mere exemption or privilege. The right to use and occupy constitutes of the homestead a freehold in the nature of a life estate which, by all the authorities, is a freehold, Snell v. Snell, 123 Ill. 403, 14 N.E. 684, and that which the surviving spouse has by right, irrespective of devise or conveyance of it to her. By the provision of Constitution, the homestead consists of land. Miller v. Farmers State Bank, etc., 137 Okla. 183, 279 P. 351; Finerty v. First Natl. Bank, 92 Okla. 102, 218 P. 859, 32 A.L.R. 1326; 40 C.J.S. 430. Homestead is a sort of joint tenancy with right of survivorship. Tooler v. Com'r of Internal Revenue, 121 Fed. 2d 350; 29 C.J. 784; Sargent v. Sargent (Tex. Civ. App.) 19 S.W. 2d 382. The rule prevails in Texas that the homestead right is an estate in land and not a mere privilege of exemption or possession. Evans v. Mills, 67 Fed. 2d 840; Andrews v. Security Natl. Bank, 121 Tex. 409, 50 S.W. 2d 253, 83 A.L.R. 44. The purpose is to provide a home for each citizen where the family may be sheltered and live beyond the reach of financial misfortune.

It is said in Maloy v. Wm. Cameron & Co., 29 Okla. 763, 119 P. 583, that the homestead was unknown at common law and exists only by statute or constitutional provisions. But the homestead exemption is not in derogation of the common law. The family home is one of the evidences of modern civilization. It is recognized among the earliest institutions of the common law. The dwelling place with interest in land lying about and contiguous to it was always inalienable and undevisable except when required by the sovereign or for defense of the state. Riggs v. Sterling, 60 Mich. 643, 27 N.W. 707. Neither could the creditors, at common law, sell any of the debtor's lands to satisfy the debt; and such continued to be the law for centuries and long after the restriction on alienation had been removed. 3 Blackstone Comm. 418. Stat. Westminister 2 (13 Edward ch. 1, 18).

The writ of fieri facias and levari facias only allowed the taking of goods

and profits of the debtor's lands. The sheriff was not allowed to disturb the debtor's occupancy or possession of lands even under the writ of elegit. Under the writ of elegit, the sheriff could not sell the lands. He could only take possession of half of the debtor's land and could hold it no longer than the profit would amount to enough to satisfy the debt. 3 Blackstone Comm. 160. So it is only in pursuance of statute law that the right of the creditor to have his debt satisfied by sale of debtor's land ever existed in England or this country. The limitation and exclusion by statute of the exemption at common law constitutes the departure from the common law, and so the provisions of statute and Constitution for the homestead right and exemption is not a departure from common law.

Under no circumstances, then, does the rule of strict construction apply to the provisions securing the homestead. Moreover, the common law, as modified, remains in force in aid of the general statutes of Oklahoma, and the rule of the common law that statutes in derogation thereof shall be strictly construed does not apply in this jurisdiction, but all statutes shall be liberally construed to promote their object. 12 O.S. 1941 § 2.

In monarchial government, where it is not the policy but a necessity to increase tenancies and dependencies in order to maintain supremacy of the sovereign and give stability to the empire, there is reason for restriction of the homestead right. But in democracies like ours, where tenantry is unfavorable to freedom and independence of the people, where ownership of the freehold is essential to the highest development of the citizen and to patriotism, the homestead is important and necessary and as an interest in land the public policy is fixed by Constitution and statute, evidencing an obvious intent to secure to every householder a home where the family may be sheltered and live beyond the reach of misfortune such as the death of the head of a family or of financial distress.

Franklin v. Coffee, 18 Tex. 413, 70 Am. Dec. 292; Wassell v. Tunnah, 25 Ark. 103.

The singular feature revealed by examination of the subject is that in this country the imperious demands of business, the avarice and greed for wealth should for so long a period have been allowed to influence legislation and decisions so as to obliterate the wise and humane provisions of the common law and place not only the home but the homestead of every family at the mercy of selfish creditors and uncompromising devices.

Happily, decisions in sister states indicate a trend to seize upon opportunities to improve upon construction of the law as to homesteads and to construe with favor and liberality provisions of the Constitution and statutes in accordance with equity and the spirit of law. By these late decisions, homes and homesteads are again restored to the citizen after so many years of deprivation and destitution have been endured by the unfortunate in every community. Riggs v. Sterling, supra; Hensley v. Fletcher, 172 Okla. 19, 44 P. 2d 63; Thompson v. Marlin, 116 Okla. 159, 243 P. 950.

Whatever the right, it may not be conveyed except by consent of both husband and wife. Indubitably, in the case at bar that consent is lacking. It is not within the power of one spouse, by devise, to separate the homestead into elements consisting of use and occupancy and land, and, against the will and without the consent of the other, to convey to the other that which by force of law she already has, to wit, the right of use and occupancy, then to grant the remainder to another. Though all of this would be permitted as to the remainder if the homestead were considered a mere exemption or right that might be waived. Gum v. Wolfinbarger, 338 Mo. 968, 93 S.W. 667; Haines v. Carroll, 327 Mo. 1026, 38 S.W. 2d 1047.

By reason of express constitutional and statutory provisions, the homestead

can be alienated only with the consent and joinder of husband and wife. 40 C.J.S. 567; Billy v. LeFlore Co. Gas & Elec. Co., 190 Okla. 88, 120 P. 2d 774; Brooks v. Butler, 184 Okla. 414, 87 P. 2d 1092; Barnett v. Sanders, 121 Okla. 14, 247 P. 55; Kyger v. Caudill, 115 Okla. 102, 241 P. 814; Fetterman v. Franklin, supra; Fletcher v. Popejoy, supra. The effect of the law is to prohibit all methods of alienation of the homestead except in the manner designated (40 C.J.S. 568) and an unauthorized conveyance of the homestead is void, Standard Sav. & Loan Ass'n v. Acton, 178 Okla. 406, 63 P. 2d 15, notwithstanding a reservation in the conveyance of a life interest in the property for the wife's benefit. 40 C.J.S. 573.

In Gassin v. McJunkin, 173 Okla. 210, 48 P. 2d 320, involving the will of Andrew Gassin, Sr., deceased in 1911, devising property including a homestead to his surviving wife, it was erroneously said:

"The laws of this state create no limitation upon the power of the owner of homestead lands to devise the same by will, subject to the right of the surviving spouse to possess and occupy such lands for life as provided by sec. 1223, O.S. 1931."

Such was the rule in Robertson v. Hurst, 80 Okla. 115, 190 P. 402, regarding wills executed pursuant to section 1, ch. 41, S.L. 1909, providing:

"No person who is prevented by law from alienating, conveying or encumbering real property while living shall be allowed to bequeath same by will."

But the error of the court's decision, based upon the statute as then construed, was detected by the Legislature and an amendment in 1925 was provided restricting the privilege of a will so that the homestead could only be devised by one spouse to the other. In fact, the owner of the homestead, if married, could, without the aid of statute, always *convey by deed* the homestead to the other spouse and without necessity of the other spouse's joining

in the deed. Hall v. Powell, 8 Okla. 277, 57 P. 168.

By the same omen, then, without particular authorization of statute, the one spouse under the general law might by will *devise* a homestead to the surviving spouse. But by legislative amendment in 1925 (S.L. 1925, ch. 26, p. 30) after the all-embracing inhibition that "no person shall by will dispose of property which could not be by the testator alienated, encumbered, or conveyed while living," the scope of which phrase included the homestead, by exception it was specifically provided that "the homestead may be devised by one spouse to the other."

By a rule of strict construction and without a modicum of liberality, to effect the purpose of a homestead and preserve it until the youngest child becomes of age, it was held that the provision of statute, before the amendment of 1925, meant that the owner of the homestead could not, by devise, without consent of the other spouse, convey *possession* of the homestead, but that he could, subject to the other spouse's right of use and occupancy, convey *title* to the homestead, and that the title so conveyed (the remainder), upon the death of the other spouse, merged into a title fee simple absolute.

The fault with such a construction is that it tended to deprive the minor child of the right of use and occupancy. However, since the amendment (1925) the state has done that which it has right to do, i.e., restricted the use of a will as to a homestead so that the homestead may only be devised by one spouse to the other.

Some of the former decisions are as in South Carolina, Davis v. Milady, 92 S. C. 135, 75 S.E. 363, Anno. Cas. 1914B, 267:

"After a homestead has been set off and recorded, the same shall not be conveyed by deed of conveyance, mortgage or otherwise, unless the same be executed by both husband and wife if both be living."

But a devise by a husband, during the life of the wife, without her consent, of a homestead held in the husband's name, is not valid to deprive the wife of the benefits of the homestead during her life, but is valid after her death.

Such would be the law now in Oklahoma, under the rule of stare decisis, were it not for (1) the fact of the amendment by which the privilege of the will as to homestead is restricted, and (2) the rule that "In matters involving the interpretation of the Constitution it is usual and proper to give less force to the doctrine of stare decisis than in other cases," 76 Kan. 544, 94 P. 274, 16 L.R.A. (N.S.) 110, 123 Am. St. Rep. 155. The latter is so because Constitutions march. Constitutions are aided in their march by judicial interpretation necessarily employed to give full force and effect to the rights and privileges guaranteed by general terms of Constitutions. This is exemplified by (a) constitutional provision for establishing the courts, providing there shall be elected "a judge . . ." It never occurred to the framers of the Constitution that the time might come when the population and business of a district or county would increase to such an extent as to require more than one judge of the court. A strict construction of the language of the Constitution would have made necessary an amendment to the Constitution. But this has been avoided by judicial construction. State v. Hutchings, 79 Kan. 191, 98 P. 797.

(b) Consider the broad and liberal construction by the Supreme Court of the United States of the Commerce Clause of the Federal Constitution. No one would have the hardihood to contend that when the general government was given power " to regulate commerce between states" the framers had the remotest conception of the vast extent of power implied by the language. So Constitutions do march— just like the sun moves—perhaps not in an orbit around the earth but in space unlimited—like those things, within conceptions of, Federal courts, effect interstate commerce.

By law, a surviving spouse and children have a homestead right in land. if the land may be devised to another, other than the widow (contrary to statute), and a widow accepts provisions of the will, she cannot logically claim a homestead estate in the land; by such an instrument she is sought to be divested of that which the law has invested her. It has been held that by the widow's acceptance of the will, the "claim" of children to a homestead is also barred. 26 Am. Jur. 100; 42 Am. St. Rep. 365; 56 L.R.A. 560. If a portion of the homestead may be devised to another and the widow elects to take under the law, certainly the widow not only takes in fee her part but likewise, by exercise of her right of use and occupancy which the law gives her, she defeats or postpones possession in the other. In view of this and other provisions of law, the Legislature has elected, by the amendment, to defeat the other entirely, and to reserve from the law of wills, the homestead. The effect of the amendment is that no other may acquire by devise the homestead. 26 Am. Jur. 10; Roberson v. Tippie, 209 Ill. 38, 70 N.E. 584, 101 Am. St. Rep. 217.

What was the effect of the amendment? It granted no new right. The amendment must have served some useful purpose. The only purpose that can be attributed to it is that the amendment was to make doubly sure that which preceded the amendment, which, for the purpose of this case, is an all-embracing inhibition against other than a single testamentary disposition of the homestead, an interest in land.

The very fact that specific provision for the restricted devise is provided invokes the rule expressio unius est exclusio alterius. The homestead may not be devised to any other.

If it be competent by statute to restrict the right to make testamentary disposition and extend the restriction to the homestead, that, the Legisla-

ture, by clear and unambiguous language, has done.

It follows that the trial court erred in sustaining the decree distributing the two-thirds interest in the land comprising the homestead to George B. Carothers, who was the son and not the spouse of testator, Joseph W. Carothers, deceased.

Some comfort is found by the majority from the use of the word "alienate" in the statute of Kansas, the import of which, when Oklahoma adopted its statute on wills, was enlarged by the ·use of the substituted word "convey."

While the words may have the same import, inter vivos, the broader term "convey" in its setting embraces all manner of transfer as to property constituting a homestead. Law Lexicon, Cochran. Thus a homestead, the naked legal title of which rests in both or either spouse while in esse and married, during lifetime may not be transferred by the single act, word, or deed of either spouse without joinder of the other. The spouses have joint possession of the homestead for the family and by the statute prior to its amendment, that which a sole spouse was by law prohibited from doing in his lifetime, he could not convey by testamentary disposition effective at his death. Death does not alone confer power to effect the transfer. It is the happening of an event which facilitates testamentary disposition. The death divests man of all powers in the animal kingdom, despite the rule in Kansas, limited as it is by use of the word "alienate" in lieu of "convey" as in Oklahoma. By the testamentary act, the devise of the homestead, though subject to revocation, is effective upon the happening of the event to transfer title to the homestead.

It is readily agreed that possession of the homestead may not by law be ·vised to a stranger of the family. Nor may such devise, by virtue of the statutory provision, convey title of the homestead to an elder son in recog-nition of the feudal law's rule of primogeniture. The rule of right of the eldest son to succeed to the inheritance to the exclusion of other members of the family never prevailed in the United States, and even in England it has given way to local customs to some extent. It is not the rule in Oklahoma, for, in the absence of the amendment providing the privilege of one spouse to devise the homestead to the other spouse, the true rule of the statutory provision prohibits a conveyance of the homestead by the devise of a will of one spouse alone because such a spouse could not, if he is married, transfer or convey by his act alone, the homestead in his lifetime, but such an instrument of conveyance requires the joint act and deed of both husband and wife.

Moreover, without amendment of the provision by an exception, the homestead could not be devised at all.

In the State of Kansas, as recited by the majority opinion, it was held the homestead is not alienable by the act of any spouse alone in whom legal title might have been vested, for the title spouse had to be joined by the other spouse in the transfer.

The major jurists of the Supreme Court of Oklahoma derive their rule, not from the statute, but by judicial construction based upon a rule of property which, because of its fancied existence under the rule of stare decisis, impels them to perpetuate the rule, contrary to the proviso and exception of the statute.

As a minor justice, it is my opinion that the property right of a homestead as an item of domestic relations is a rightful subject of legislative consideration and enactment; and within the short span of time since statehood, the matter of a rule of property and a homestead is not relegated to the static rule of stare decisis, particularly when the supreme legislative power has expressed itself on different occasions.

The statutory exception provided in

the amendment (1925) has not been construed since the legislative amendment.

The prior judicial construction of the proviso apparently was not legislatively satisfactory. Otherwise, the statute would not have been amended at all. But if the previous court decisions were adverse to the legislative expression in the proviso, the majority now say the judicial will may not be overthrown "unless the statute compels" it.

But the justices, in minority or majority, have no election to rely upon their will or the court's errors in view of the legislative amendment. It is the will of the law submitted by the statute that is before them for their construction. The supreme judicial power of the state should be guided by the law and the statute's persuasion.

The majority reason that the last restrictive statutory proviso "has been construed as not preventing a devise of the homestead," but the construction is false as legislatively ascertained and remedied by the amendment. The Supreme Court thought, prior to the amendment, that conveyance of the homestead by the devise of a will did not convey possession of it though it might convey legal title to the land constituting the homestead. This error prevailed until the legislative correction by amendment, but now the majority say that the legislative amendment providing the exception is "a grant of power." The amendment provides, "Except that the homestead may be devised by one spouse to the other."

But the exception from the proviso is not an unlimited grant of power. But assuming, as does the majority, that the amendment constitutes an act "organic in its nature" bestowing the right to grant the homestead, it is then the sole and only grant of the privilege, and of necessity, the grant of the right may be limited and the devise by terms of the grant may convey the homestead only to the widow or surviving spouse.

The purpose of an exception to a proviso is to restrict the statutory privilege or right to make a will. But if this particular exception is a grant of power, the right is restricted by the text of the statute creating the right, namely, to convey by will the homestead either as to possession of it or the mere naked legal title, from one spouse to the other.

But, say the majority, the limitation of the statute is an express power "taking all inalienable land which could not be devised out of the statute and authorizing one spouse to devise to the other spouse any such inalienable land occupied as the constitutional homestead." So, the statute is limited in its application by judicial fiat to such people as restricted Indians or land burdened with the covenant. But legislative authority of the State of Oklahoma is vested in the Legislature (art. 5, sec. 1, Const.) and no special laws shall be considered, unless within the exception (art. 5, sec. 32, Const.) not in the case at bar appertaining; nor shall the Legislature "pass any . . . descent or succession" (art. 5, sec. 46 (n), Const.); nor "granting" to any individual any exclusive right, privilege, or immunity (art. 5, sec. 51, Const.) "but laws of a general nature shall have a uniform operation throughout the state . . . " (art. 5, sec. 59, Const). So that such legislative enactments as the statute of wills now under consideration are enacted for all of the people and are not to be confined by judicial construction to restricted Indians.

If the matter of inalienability of land rests in contractual rights, it is a restrictive covenant running with the land and binding upon the assignee of land. So a statute, in its scope applicable only to the person of Indians, restricted in enjoyment of rights by Acts of Congress to serve the protection of wards of the general government, or contractually by a deed or devise, applicable to the subject matter of a grant of lands constituting a homestead, would serve no useful purpose. So the solemn act of the supreme legislative

department of state government is, by opinion of the majority of the justices, convicted of an idle gesture and an absurdity.

"Should the husband own land," say the majority, "in fee simple," restricted against alienation "during his lifetime . . . he would be without power to devise the same." Thus this court has uniformly held in interest of the family. But, say the majority, "under the exception to the proviso, if he occupied said lands as a . . . homestead of himself and wife, the statute . . . gives him express authority to devise said inalienable land to his wife." If this is the expressed power in the statutory grant of a right or privilege not theretofore existing under the common law in force in aid of statute in Oklahoma, the grant, if it be a grant without a restriction, will be liberally construed according to the purpose of the statute and not according to judicial construction based upon a rule of property arising from previous and erroneous judicial constructions called stare decisis. So the majority of the justices convict themselves of an absurdity, for, suppose Congress restricted absolutely an Indian as a ward of the general government, or suppose by the contract of a deed the land of a white citizen is restricted in the absolute as a perpetuity or for years, does the majority think the mere act of an Oklahoma Legislature may make that which is thus inalienable, by Act of Congress or of contract right, alienable?

I shall respectfully dissent to any opinion which lays a predicate that the right to make a will is not governed by the statute and which joins with the falsity of the omission to state that fact of law the ipse dixit that "the right was so anciently granted" to arrive at the illogical conclusion that the legislative restriction of the privilege, existing alone by virtue of the statute, to convey land of a homestead by devise, will be strictly construed because of an alleged antiquity of the grant of a right to make a will. The majority say "said right was so anciently granted." The right did not exist in antiquity of the law nor at common law, for the right to alienate land by will does not exist except by virtue of the state statute, which State of Oklahoma had its origin in the good year 1907.

I have, at the risk of being boresome, shown that the right to make a will does not now, and never did, exist anywhere. It is a mere privilege to be afforded, limited, or denied by the statute.

The mandate of the law enjoining a duty, amongst others, upon the Supreme Court is that the rule of strict construction of a statute in derogation of common law shall not be countenanced but that a statute in derogation of common law shall be liberally construed to effect the purpose of the enactment. The only purpose that can be attributed to the supreme legislative power expressed in the statute is that it was enacted by the people's representatives in the Legislature assembled, for the whole people and not to satisfy the whim, will, or caprice of the justices major or minority groups as represented by judges or lawyers or their clients who are so unfortunate as to become litigants. Certainly the statute is not violative of the constitutional injunction prohibiting special and class legislation and thus limited in the scope of its operation to the person or estate of individuals who under federal laws may be restricted. The argument of the majority indicates the absurd notion that Congress restricts poor John Lo in his lifetime but the justices major give to him by freedom inter vivos what Congress would not.

The Legislature well knew its function and the purpose of its original statutory enactment and the amendment providing the exception. The amendment was subsequent in time to the court's erroneous decisions. By the amendment, the Legislature secured again the purpose stated in the original statute restricting the privilege of conveying the homestead by the single testamentary act of a spouse, effective

upon the death of the testator. Neither the possessory right nor title in land of the surviving spouse was intended by the original legislative act to be devised to a stranger or to an eldest son, but that this court could not comprehend. The justices of yore held that the owning spouse of a homestead could, by the devise of a will, transfer to a stranger the naked legal title to the homestead. To this construction, the Legislature, by amendment, provided an exception, and so the legislative will was again so expressed. That legislative movement evidences a legislative knowledge that "The Supreme Court thought the homestead title to land may be alienated from the surviving spouse." So the supreme legislative authority expressed once more its will by amendment. The Legislature imposed an exception to the proviso and assumed the Supreme Court would follow ordinary rules of grammar and the doctrine usually employed in the construction of a statute, i.e., "the last antecedent." But this second expression of the legislative will is now erroneously resolved into an unlimited grant of a privilege to devise the homestead away from the other spouse, when in plain English the statute directs the devise to the other spouse.

The majority are adamant in their erroneous construction, destructive of the limitation of the right by the statute alone existing. It is human to err; perfection is divine! But habitual error might justify harsh legislative action to accomplish a purpose. The Legislature thought that if the majority of the court could not understand that a proviso was a limitation, they would try by an amendment an exception as to the privilege granted and limited, so that the owning spouse of a homestead, if the English language is accepted, can convey the homestead to the other spouse who is expected to survive the testator who has title in his name, "Except that the homestead may be devised by one spouse to the other," and without the exception there is utterly no power to devise the homestead at all, because without a statutory provision there can be no will, and in the absence of a will, the homestead, at death, passes by succession.

But again the majority of the court are adamant. They, in effect, say that the homestead right in title, if not possession, may by judicial fiat based on previous and erroneous construction of the statute of wills, under the rule of stare decisis, pass from the titled spouse at death to the eldest or minor son or daughter, or an alien of the family. The majority indulge the violent presumption that the Legislature did not know what it was talking about, nor the desire and pleasure of those it represented but that it did know the previous decisions of the Supreme Court, and that the Legislature should have overruled them in express terms if it did not like the law as stated in the last guess of the Supreme Court. The majority think the Legislature should have used "clearer and more explicit" language. The majority also walk the ghost of the "probate homestead" once more. But the Legislature never provided any distinction in homesteads, statutory, probate, or constitutional. In law there is none. The homestead is a home whether the property be real, in the sense that it is a freehold, or merely for the term of a tenant and his family. It matters not whether the homestead to house the family be a hovel or the shack of a squatter, or the shelter of a cottonwood tree. The homestead may be the castle vested by title of the sovereign, whether the sovereign be considered the corporate state or a monarch.

There is not, as stated by the majority, an absurd contention presented by the appellants, as in the majority opinion exemplified by the dual instance of the adult and/or minor children of the homestead owner. The head of the household is not debarred from protecting such minor children. He may, if he chooses, by the devise of a will, vest the title of the homestead in the mother, in trust for the children, just as nature vested in the mother the protection of

the father's "helpless babes". I refrain from joining in any such abstraction that also convicts Mother Nature and results in "unjust consequences" founded on "specious reasoning" contrary to all rules of construction.

"Law is something more than a succession of isolated judgments which spend their force when they have composed the controversies that led to them". Cardozo.

The Supreme Court should not have an opinion adverse to the common law, the statutory law, and to nature. But since the majority convict all of these of an absurdity, it may be remembered that "while courts try cases, cases also try courts". (Robert Jackson).

The Medes and the Persians never attained either habitual errors or permanency of their laws, whereas the judicially constructed rule of property in Oklahoma affecting the homestead seems to be legislatively irrevocable.

I respectfully dissent.