**J. Robert SOWDER, Appellant,**

v.

**WARAY OIL CORPORATION, a corporation, Warren B. White and Stanton L. Young, Appellees.**

**No. 5177.**

United States Court of Appeals
Tenth Circuit.

Feb. 24, 1956.

Before MURRAH and PICKETT, Circuit Judges, and MELLOTT, District Judge.

MELLOTT, District Judge.

The parties willl be referred to as they appeared in the trial court. Plaintiff,[1] a resident of New York, sought specific performance of an agreement to sell designated oil and gas leasehold interests in Garfield County, Oklahoma. Judgment was rendered for the defendants, a motion for a new trial on the ground of newly discovered evidence was overruled and plaintiff appealed.

Many of the basic facts were admitted in the answer. White, president of the corporate defendant, had written two letters to plaintiff under date of May 25, 1954. In one the corporation offered to drill a test well on one of its properties "for the sum of $41,250.00 plugged and abandoned, with an assignment * * * of a ¾ths interest" in three leases to plaintiff. The well was to be drilled to a depth "sufficient to test the Arbuckle dolomite at approximately 5200 feet, unless commercial production * * * [should be] found at a lesser depth." In the other it was stated a "verbal agreement" between the corporation and plaintiff was confirmed, under which "the difference between the amount deposited by * * * [plaintiff] and the $41,250.00 required to drill the * * * Prospect," would be paid to plaintiff at the time such sum should be deposited. The second was obviously written to enable plaintiff to negotiate a sale of his interest, or a portion of it, to others; and one McCrary, of Texas, ultimately collaborated with plaintiff in an effort to secure the leases upon the payment of the sum named.

The issue raised by the pleadings was whether an attempt by plaintiff and his associate, on or about June 21, 1954, to accept the offer of May 25, 1954 was, under the circumstances, timely, i. e., made while the offer was still open. The trial court resolved it in favor of the defend-

Fred W. Dunlevy, Oklahoma City, Okl. (Jacob M. Usadi, New York City, was with him on the brief), for appellant.

Wallace E. Robertson, Oklahoma City, Okl. (T. Murray Robinson, Oklahoma City, Okl., was with him on the brief), for appellees.

1. During the pendency of the appeal plaintiff died and the executor of his estate was substituted as appellant.

ants, making findings of fact and conclusions of law as required by Rule 52, F.R.C.P., 28 U.S.C.A. Its ultimate finding was: "That plaintiff's evidence does not show that his alleged acceptance of June 21, 1954, was acceptance of any offer open for acceptance at that time." This finding and the three preceding ones [2] are assailed as not supported by the evidence.

During the course of the trial and before the findings were made, the court indicated why it felt those now attacked should be made. It was stated that whether the court believed the testimony or not, to the effect that the offer had been specifically withdrawn, plaintiff "would know that it was withdrawn because the test was such as to put an experienced oil man on notice in that area materially." Doubt was expressed that the parties would "act contrary to the ordinary actions of human beings under those circumstances" and the court stated there was "not sufficient evidence here to indicate it." Counsel for plaintiff having called the court's attention to the testimony of plaintiff, which he characterized as "direct and positive," the court stated it could not believe the testimony, saying:

"It is contrary to * * * what any normal human being would have done under the circumstances. I couldn't believe that the defendants * * * would make any such statement. There would be no reason for them to make it, and I don't believe they did * * * and if

Mr. Sowder contends that far, I think his testimony is untrue and so find it to be."

The brief references to the colloquy indicate, as indeed the record clearly shows, that whether the offer had been withdrawn before acceptance was the crucial issue of fact submitted to the trial court upon conflicting evidence. Its findings should not be set aside unless clearly erroneous, and due regard should be given to its opportunity to judge the credibility of the witnesses.[3] Applying the usual test whether the findings are "clearly erroneous," this court, after a careful review of all of the evidence, is not "left with the definite and firm conviction that a mistake has been committed."[4]

Plaintiff argues that the trial court "was obviously influenced too much by the fact that there was a successful * * * test in the offset well," which, it is said, must have been the basis for the court's finding that the offer had been withdrawn by implication. The finding, it will be noted, was that the offer had been "withdrawn, either expressly, by implication, or both." Evidence obviously in the mind of the court included the testimony of plaintiff that the test had made "the value of the property look better" although plaintiff stated he "didn't know whether it would establish the price" mentioned in the offer; also the opinion of a witness called as an expert, who stated "that the very fine positive drill test would add substan-

---

2. The other findings were that the test in an offset well indicated the presence of oil and gas in commercial quantities and materially increased the market value of oil and gas leases in the area, including the lease involved in this case; that at the time of a telephone conversation between plaintiff and White on June 18, 1954, the offer had not been accepted and "during the course of the conversation" it "was withdrawn, either expressly, by implication, or both"; and that there was not, at any time, any agreement between the parties, oral or written, that the offer would be "held open for any specified period of time or

until the property was sold to other parties."

3. Rule 52(a), F.R.C.P.

4. United States v. United State Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 542, 92 L.Ed. 746; H. F. Wilcox Oil & Gas Co. v. Diffie, 10 Cir., 186 F.2d 683; Diffie v. H. F. Wilcox Oil & Gas Co., D.C., 4 F.R.D. 240; Cf. United States v. Yellow Cab Co., 338 U.S. 338, 70 S. Ct. 177, 94 L.Ed. 150; Brown v. American Nat. Bank, 10 Cir., 197 F.2d 911; and Orvis v. Higgins, 2 Cir., 180 F.2d 537, certiorari denied 340 U.S. 810, 71 S. Ct. 37, 95 L.Ed. 595.

tially to the value of that acreage"; and the testimony of a vice-president of the company that an extremely good test in the offset well, which he stated the present one was, would treble the value of the acreage in issue. Whether evidence of that type, coupled, as it was, with an expressed feeling of the court that "a drill stem test with a showing like this had greatly increased the possibility of a well," would support a conclusion that the offer had been withdrawn by implication, need not be decided. It was, at least, a circumstance to be considered in resolving a difficult fact question. One somewhat akin is suggested in a quotation from the opinion by the Supreme Court in Twin-Lick Oil Co. v. Marbury, set out in the footnote.[5]

Recently this court, in Justheim Petroleum Company v. Hammond,[6] applied essentially the same principle, holding that a party to a contract for the purchase of an interest in oil and gas properties could not delay, if he wished to rescind the contract, until after drilling had disclosed the property to be valueless or of less value than anticipated.

The contention that the trial court abused its discretion in refusing to open the judgment and permit the introduction of additional testimony and in refusing to grant plaintiff a new trial on the ground of newly discovered evidence remains for consideration. The additional evidence concerns a long distance telephone call which White, the president of the corporate defendant, testified he had placed from his office in Oklahoma City to the plaintiff in New York on June 18, 1954. It would tend to indicate that White made no such telephone call and that the only calls to New York by him on that date were to a Mr. Conway, who was not involved in this lawsuit nor acting directly or indirectly for plaintiff.

The affidavits indicate that the records of the telephone company pertaining to long distance calls made by White on June 18 through June 20 were produced at the trial by an employee of the telephone company; that the witness was excused from further attendance upon the court at the close of the plaintiff's evidence, at which time he removed the original records; that thereafter White testified he placed a call to plaintiff in New York City on June 18; that subsequent to the trial the telephone company was unable to locate the long distance (toll) ticket evidencing the charge for White's call to New York City; and that the missing ticket was subsequently mailed to counsel for plaintiff by an unknown, unidentifiable, addressor, attached to which was a typewritten note stating: "My conscience has troubled me. I hope no questions will be asked."

The trial court in overruling the motion for a new trial held that the evidence came too late; that its decision upon the merits did not rest on the evidence of the telephone calls; and that it would not permit the plaintiff, by innuendo, to cast aspersions upon anyone involved in the lawsuit. Our decision

---

5. "The fluctuating character and value of this class of property is remarkably illustrated in the history of the production of mineral oil from wells. Property worth thousands to-day is worth nothing to-morrow; and that which would to-day sell for a thousand dollars as its fair value, may, by the natural changes of a week or the energy and courage of desperate enterprise, in the same time be made to yield that much every day. The injustice, therefore, is obvious, of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit.

"While a much longer time might be allowed to assert this right in regard to real estate whose value is fixed, on which no outlay is made for improvement, and but little change in value, the class of property here considered, subject to the most rapid, frequent, and violent fluctuations in value of any thing known as property, requires prompt action in all who hold an option, whether they will share its risks, or stand clear of them." 91 U.S. 587, 592–593, 23 L. Ed. 328.

6. 10 Cir., 227 F.2d 629, 635–636.

will be based squarely upon the second—i. e. that the number or origin of the telephone calls is not determinative. While we cannot condone the perpetration of a fraud upon the court or approve the deliberate withholding of what may have been important evidence in the trial, we pass this phase of the matter without further discussion, setting out in the footnote, however, a statement from defendant's brief.[7]

We are of the opinion the trial court did not abuse its discretion or commit reversible error in overruling plaintiff's motion for a new trial. Whether White had called plaintiff, or vice versa, at best would only effect the credibility of the witnesses. Plaintiff could not recall whether he had called White or White had called him on June 18, 1954; but it is clear that plaintiff, on that date, was told about the indication of oil and gas in commercial quantities in the offset well. He stated that he "wanted to follow the progress of that well naturally"; and the evidence indicates that in spite of an adverse report to McCrary by his geologist plaintiff's efforts to interest him in the leases continued. He testified that he talked to White "on the 18th, I suppose on the 19th, and on the 20th." The precise number of telephone calls and who made them was only incidental to the issue being tried—whether the offer of May 25 remained open after the showing of oil and gas in the offset well. Plaintiff's testimony was far from convincing. At one point he stated that after he "got the information that the Wilcox [offset well] was open for 90 minutes and showed at the rate of 50 barrels an hour, that made it worth just about the price we were asking for it and I told him [White] so." Later he testified that during the period between June 17 and June 20 he had "telephoned Mr. White," passing on to him information concerning an offer of a company to "pay $25,000.00 in cash and carry them for a quarter overriding royalty," but that White had said "it wasn't acceptable and as far as that is concerned it wasn't acceptable to me, but I was keeping him posted on everything how we were doing."

█ It would serve no useful purpose to quote more extensively from the evidence. The portion which has been set out points up the difficult factual question submitted to and resolved by the trial court. Its conclusion, we believe, was clearly justified under the evidence. Nor is our holding contra to Prudential Ins. Co. v. Gilroy [8] or R. E. Crummer & Co. v. Nuveen,[9] upon which plaintiff heavily relies. In the Prudential case the newly discovered evidence pertained to premium receipts, alleged to be forged, which, if established, would bar recovery under the policy. The rationale of the Crummer case is applicable only if it be found that there is no evidence to support the trial court's finding that there was an express withdrawal of the offer, which we decline to make.

Affirmed.

7. "The writers of this brief have been authorized to state on behalf of defendant, its officers, agents, counsel and witnesses who testified in the trial court in its behalf, that none of said parties desire to retract any portion of the testimony on behalf of defendant concerning telephone calls or any other phase of the controversy, and that all of said parties deny categorically that they falsified, misrepresented, concealed or had possession of, any records of the telephone company before, during or after the trial of this cause, except to cause said records to be brought to the court room by a representative of the telephone company, under *subpoena duces tecum*, where they could have been examined by any one who was interested in them at that time."

8. 5 Cir., 154 F.2d 382.

9. 7 Cir., 147 F.2d 3, 157 A.L.R. 739.