**Joe COLBY and Walter Colby, Appellants,**

v.

**CITIES SERVICE OIL COMPANY, a Delaware corporation, and Sinclair Oil & Gas Company, a Maine corporation, Appellees.**

**No. 5707.**

United States Court of Appeals
Tenth Circuit.

April 8, 1958.

G. C. Spillers, Jr., Tulsa, Okl. (G. C. Spillers, Tulsa, Okl., Fred A. Tillman and John W. Tillman, Pawhuska, Okl., were with him on the brief), for appellants.

Truman B. Rucker, Tulsa, Okl. (Gentry Lee and L. L. Corn, Bartlesville, Okl., were with him on the brief), for appellee Cities Service Oil Co. (Angus A. Davidson and James McGowan, Tulsa, Okl., were with him on the brief), for appellee Sinclair Oil & Gas Co.

Before BRATTON, Chief Judge, PICKETT, Circuit Judge, and RICE, District Judge.

PICKETT, Circuit Judge.

The plaintiffs brought this action to recover damages to the value of their farm lands allegedly caused by the defendants in allowing salt water, resulting from the operation of oil wells, to pollute the water underlying their lands. This is an appeal from a judgment in favor of the defendants.

The complaint alleges that plaintiffs' farm is located in Osage County, Oklahoma, adjacent to the south bank of the Arkansas River, about seven miles east of Ponca City, Oklahoma; that during the year 1934 defendants drilled an oil well on plaintiffs' land; that in the operation of this well large quantities of salt water were produced which was disposed of by dumping it into an open earthen pit located near the well, from where it drained below the surface of the ground and flowed into the subsurface waters underlying plaintiffs' land, thereby making the water unfit for irrigation purposes; that in 1950 a second oil well was drilled and the salt water produced therefrom went into the same pit, and that this pollution continued from 1934 to and including the year 1954, at which time plaintiffs discovered the pollution. It was also alleged that during the year 1951 the defendants drilled a salt water disposal well which was negligently operated to plaintiffs' damage.

The defendants admitted that they drilled the two wells in question; that salt water was produced from each of these wells which was stored in surface pits located near the 1934 well; that from 1951 they operated a salt water disposal well in a proper and careful manner; and that all salt water produced by the oil wells was disposed of in this well after it was completed. They specifically denied that they allowed any of the salt water to percolate or be transported into the subsurface waters underlying plaintiffs' land, or that the pollution of such underground water has occurred or is occurring by reason of salt water produced from the two oil wells.

The case was tried to the court without a jury, which found that between the years 1934 and 1951 defendants produced a total of approximately 243,000 barrels of salt water which was placed in a salt disposal pond adjacent to the first well; that subterranean water underneath plaintiffs' land, although constantly entering and leaving the area, approximated 21,000,000 barrels; that all of the water underlying plaintiffs' farm was not polluted; and that at certain places and depths the water was fit for domestic and irrigation use, while at other places the salt content was sufficient to make it unfit for either domestic or irrigation purposes. The court further found that there was no competent and convincing evidence that all the water beneath plaintiffs' land was suitable for domestic or irrigation use prior to 1954; that subsequent to 1951 only small and inconsequential amounts of salt water produced by the defendants went any place except into the salt water disposal well, and no damage resulted to the plaintiffs from such water; and that there was no competent evidence that the plaintiffs sustained damage as the result of the production of salt water by the defendants. The plaintiffs vigorously contend that these findings are clearly erroneous and that a review of the evidence should disclose that a mistake has been made and that the judgment should be reversed in the interests of justice.

Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A., provides that in all cases tried to the court without a jury, the court's findings of fact shall not be set aside unless clearly erroneous. The courts have repeatedly said that where the evidence and reasonable inferences fairly to be drawn therefrom are sufficient to support the findings of the trial court in a non-jury case, they will not be overturned on appeal unless clearly erroneous. In cases where there is evidence from which reasonable men might draw different inferences, appellate courts may not substitute, their judgment for that of the trial court. United States v. National Ass'n of Real Estate Boards, 339 U.S. 485, 70 S.Ct. 711, 94 L.Ed. 1007; Wunderlich Con-

tracting Co. v. United States, 10 Cir., 240 F.2d 201, certiorari denied 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 859; Sowder v. Waray Oil Corp., 10 Cir., 231 F.2d 9; Van Dreal v. Van Dreal, 10 Cir., 214 F.2d 715; J. P. (Bum) Gibbons, Inc. v. Utah Home Fire Ins. Co., 10 Cir., 202 F. 2d 469. While it is true that appellate courts may reverse a judgment where a review of the entire record shows that a judgment is clearly erroneous and an injustice has been done, even though there is some evidence to support it, it is clear that the evidence here does not present a situation where that rule should be invoked. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746, rehearing denied 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147.

It would serve no useful purpose to review the evidence in detail here. It suffices to say that there was direct conflict in the evidence upon the issues of whether there was sufficient salt water seeping from the pits over a period of twenty years to contaminate or pollute such a large body of water as that underlying plaintiffs' land, and whether the salt water in the pits reached plaintiffs' underground water to cause the pollution. There was evidence from competent witnesses that the purity of underground water along the Arkansas River in the vicinity of plaintiffs' land was very irregular, and that generally, the water from the river was not suitable for irrigation. Some of the underground water was found to be excellent, and some was unfit for domestic or irrigation purposes. There was evidence that the water underlying plaintiffs' land was part of a large aquifer from which Ponca City withdrew 23,000,000 barrels of water per month for its domestic use; that there was other water taken from the same aquifer; and that these withdrawals caused a constant movement of the water underlying plaintiffs' land. The evidence was that there were layers of underground water in this area which were separated by a formation known as "red beds"; that underneath the red beds were found large quantities of salt water.

One expert testified that, in his opinion, the source of the contamination was from the bottom of the aquifer, and not from the top.

Upon the question of whether the source of pollution was defendants' salt pits, there was testimony by experts that the chemical composition of the underground water was such as to indicate that the pollution could not have come from salt water produced from the oil wells. There was also evidence that the salt water from the oil wells was hardly sufficient to wet the soil between the pits and where it was alleged to have entered the aquifer, and that after the disposal well was completed in 1951, little or no salt water could have reached the aquifer. While the court might have found otherwise, on the conflicting evidence we cannot say that its findings were clearly erroneous.

Affirmed.