**John A. THOMPSON, Plaintiff in Error,**

**v.**

**HERTZ CORPORATION, Defendant in Error.**

No. 39309.

Supreme Court of Oklahoma.

Nov. 28, 1961.

Looney, Watts, Looney, Nichols & Johnson, by Ralph W. Newcombe, Oklahoma City, for plaintiff in error.

Robinson, Shipp, Robertson & Barnes, by Leon Shipp, Oklahoma City, for defendant in error.

PER CURIAM.

In this action, defendant in error, hereinafter referred to as plaintiff, sought recovery of $200.00 from plaintiff in error, hereinafter referred to as defendant, for damages to its Chevrolet automobile, sustained while being driven south on Oklahoma City's McKinley Avenue, and struck by a panel truck being driven west on said City's Northwest 23rd Street, at its intersection with McKinley Avenue.

At the trial before a jury, it was established by undisputed evidence that Northwest 23rd Street is a "through" street, or thoroughfare, with a speed limit of 30 miles per hour, and with stop signs for traffic entering it from McKinley Avenue.

On behalf of plaintiff, Lee Jackson, driver of plaintiff's Chevrolet, testified, among other things, in substance, that he stopped the Chevrolet at said stop sign on McKinley Avenue, before entering the above-described intersection, and that, when he had started said car forward again, and driven farther south about half way across said intersection, the front of defendant's truck struck the Chevrolet behind its door, "* * * just about over its rear wheel."

Defendant testified that, when he first saw the Chevrolet, his truck was 50 to 60 feet from it, and the Chevrolet was "al-

ready" moving into the intersection; that his truck was travelling at a speed of "25 or maybe 30" miles per hour at the time he applied its brakes, but that "it was a drizzly afternoon, the streets were slick and I just slid into him." Defendant admitted that he talked to Jackson after the accident, and he corroborated Jackson's testimony that he (defendant) told Jackson he didn't see the Chevrolet in time to stop.

A portion of Jackson's cross examination was as follows:

"Q. Mr. Jackson, you say that before you entered the intersection you looked to the right? A. I looked to the left first.

"Q. Looked to the left first? A. To see if any cars were coming close.

"Q. Did you see any car coming? A. I saw a vehicle about half-a-block away.

"Q. Then you say you looked to the right? A. I looked to the right, yes.

"Q. Did you look back to your left prior to crossing? A. Well, *I can't be sure*. I am pretty sure that I did, but I *couldn't say*, because it was about half-a-block away and *I was sure that I had plenty of time*.

"Q. Did you notice how fast the other car was driving? A. Well, it is pretty hard to look straight at a car and tell how fast they are driving. I couldn't say.

"Q. Then you don't know how fast he was going at all? A. No, sir; I couldn't say just how fast he was going.

"Q. Well, did you consider that prior to going into the intersection? A. Well, *he was half-a-block away, and at the speed limit, I would have plenty of time to get across, I thought*.

"Q. Approximately how much time elapsed when you looked to the left and saw the car, and then you said you looked to the right prior to starting into the intersection? A. Well, it couldn't have been over a second.

"Q. But you didn't look back to the left? A. Well, *I am not certain*." (Emphasis ours.)

During his cross examination, Jackson admitted that, after the accident, he made a statement, which was taken down in writing, in which he said, among other things, that *he did not see the panel truck*, until after it struck his car; that he didn't have time to apply his brakes; and was certain that the defendant did not apply his brakes. The statement continued:

"I can only account for the accident with the thought that *I misjudged the speed of the other car*. I do not know whether Mr. Thompson was driving excessively or not, and I will not say that he was. I don't think he saw me. Several seconds had lapsed from the time I first saw the other car from my stopped position and the time of the collision. * * *." (Emphasis ours.)

After both plaintiff and defendant had finished introducing their evidence, and had rested, the trial court sustained plaintiff's motion for a directed verdict; and judgment was thereafter rendered accordingly. After the overruling of his motion for a new trial, defendant lodged the present appeal.

For reversal, defendant, under a single proposition, maintains in substance and effect, that the evidence was conflicting as to whether or not the accident was caused by negligence on the part of plaintiff or negligence on the part of defendant; and that in such situation, it was for the jury, rather than the court, to determine said issue. He cites Tit. 47 O.S.1951 § 121.6(c), Ruth v. Reeves, Okl., 340 P.2d 452, and Guegel v. Bailey, 199 Okl. 441, 186 P.2d 827, as showing that the driver of a motor vehicle on a "side" street, approaching its intersection with a "through" street, has the duty to yield the right-of-way to other vehicles approaching said intersection on the "through" street " * * * so closely * * * as to constitute immediate hazard * * *"; and cannot acquire the right-

of-way over them by merely entering the intersection ahead of them.

He concludes that, on the basis of the evidence, the correct adjudication of this case hinged upon whether or not defendant's car was close enough to the intersection to constitute an "immediate hazard" within the meaning of that term as used in the cited statute.

Regardless of whether or not this was the only question in the case, it cannot be denied that it was a pivotal one. As to it, this court, in determining in Hansen v. Cunningham, Okl., 258 P.2d 906, that the trial court had committed error in sustaining a demurrer to one of the parties' evidence, quoted, with approval, (Pac.Rep. 909) the following from Wilkinson v. Marcellus, 51 Cal.App.2d 630, 125 P.2d 584, 586:

"It is to be noted that the legislature has not set a hard and fast rule for the conduct of drivers approaching through highways but has provided the general rule that such drivers must yield the right of way to others travelling on the highway who are approaching so closely as to constitute 'an immediate hazard.' Our complex traffic problems are such that the circumstances of the traffic on a through highway as a driver approaches must govern his conduct in determining whether it is an immediate hazard. Whether a driver acts with due care or negligently in proceeding across a through highway must as a general rule be left to the determination of the jury in view of all of the circumstances."

And from Galway v. Guggolz, 117 Cal. App. 639, 4 P.2d 290, we quoted the following:

"There is nothing in this section which will justify the court in prescribing in an instruction to the jury the number of feet upon which the driver may rely (as constituting 'immediate hazard'). That would be a question for the jury under all the facts and circumstances of the particular case."

 In Garner v. Myers, Okl., 318 P. 2d 410, 415, this court said that where the standard of human conduct by which the parties' negligence, or their lack of it, is not *fully* prescribed by law, the determination of the matter must be left to the jury. And our opinion therein demonstrates that this rule applies whether the facts are disputed, or are undisputed, if reasonable men might draw different conclusions from them. In referring to the function of a jury, the court, in Schulz v. Pennsylvania R. R. Co., 350 U.S. 523, 76 S.Ct. 608, 610, 100 L.Ed. 668, said:

"* * * 'The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable." Fact finding does not require mathematical certainty. Jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence * * * from which inferences can fairly be drawn."

From the above, we think it is clear that the trial court erred in directing a verdict for plaintiff. On account of said error alone, he should have sustained defendant's motion for a new trial. His order and/or judgment refusing a new trial is therefore reversed, and this cause is remanded to said court with instructions to vacate it, and grant a new trial.

The Court acknowledges the aid of Supernumerary Judge N. S. CORN in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the court.

WILLIAMS, C. J., and DAVISON, HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.