G. C. SPILLERS and G. C. Spillers, Jr., a Co-Partnership doing business as Spillers & Spillers, Plaintiffs in Error,

v.

Joe COLBY and Walter Colby, Defendants in Error.

No. 40111.

Supreme Court of Oklahoma.

April 28, 1964.

Jack R. Givens, Tulsa, for plaintiffs in error.

John W. Tillman, Fred A. Tillman, and Don Hampton, Pawhuska, for defendants in error.

BLACKBIRD, Chief Justice.

This action was commenced by plaintiffs in error, who at all times material to it, have been engaged as partners in the practice of law at Tulsa, against defendants in error, who are farmers in Osage County, to recover certain expenses plaintiffs in error allegedly incurred in representing defendants in error in an action for damages instituted in the District Court of Osage County, removed to the United States District Court for the Northern District of Oklahoma, and subsequently appealed to the United States Court of Appeals for the Tenth Circuit as its cause No. 5707, entitled: Colby v. Cities Service Oil Company, 254 F.2d 665.

The damage action was an unsuccessful attempt by the Colbys to recover $368,000 in damages from the above named oil companies, on account of their alleged pollution, with salt water, of a fresh water-bearing subterranean strata in the Colbys' land, which otherwise could have been used for irrigation purposes.

The Colbys initially engaged a Pawhuska attorney, Mr. T, and/or his firm, to prosecute the action for them on a contingent fee basis, contemplating that T would receive one-third of the sum they recovered, as attorney's fee for his services. Either before, or after, it became apparent, in 1955, that the oil company defendants in said action would obtain its removal to the Federal Court at Tulsa, Mr. T, with the Colbys' consent and approval, engaged plaintiffs in error as his co-counsel, under an agreement whereby they would receive one-half of his one-third contingent fee, as their attorney's fee. As the parties appear here in the same order they appeared in the trial court, our continued reference to

them will be by their trial court designations, or their proper names.

Previous to the time plaintiffs made a trip to Denver, Colorado, to orally argue the appeal before the Circuit Court there, in January, 1958, defendants had already paid out in direct disbursements (rather than through plaintiffs) the sum of $2477.98 in expenses connected with the litigation, including the cost of drilling test wells on the land to obtain evidence against the oil companies, and one item of $1000 they paid to the Circuit Court's Clerk as the estimated cost of a transcript of the Federal Court proceedings.

Previous to their said trip to Denver, plaintiffs received a check from the Clerk of the Federal Court at Tulsa in the amount of $11.50, which represented a partial refund of the initial court cost deposit they had advanced on defendants' behalf. After the trip to Denver, plaintiffs also received from the Circuit Court's Clerk there, a check in the amount of $241.25, representing a partial refund of the above-mentioned estimated cost of the appeal transcript, which defendants had forwarded to said Clerk. Both of these amounts were credited against, and deducted from, the account plaintiffs kept of the expenses they paid out of their private funds, but, even after these credits, the itemized statement they inclosed in a letter they wrote to one of the defendants on January 24, 1958, showed a balance due them of $857.66. It was after defendants had failed and/or refused to comply with their demands for payment of this balance, that plaintiffs instituted this action to recover it from them, in October, 1959.

In their answer to plaintiffs' petition with itemized statement attached, defendants admitted plaintiffs' employment as their attorneys, but alleged, among other things, that, in accepting said employment on a contingent fee basis, they not only undertook contribution of their labor and time, but also expenses in preparing the case for trial and appeal, along with Mr. T's firm; and defendants denied that they were indebted to plaintiffs in any amount whatsoever.

At the trial, no express agreement on the part of defendants to pay all of the expenses claimed by plaintiffs, was ever established, but the latter introduced evidence from which no other conclusion could conceivably be drawn, except that the items of expense shown in the itemized statements were reasonable and necessary to the prosecution of the pollution litigation hereinbefore mentioned. The only ones of those expense items defendants' evidence tended, in any way, to question, as to their reasonableness and necessity, were the comparatively minor ones incurred in plaintiffs' aforementioned trip to the Circuit Court argument in Denver. Rather than joining any issue as to the reasonableness and necessity of most of plaintiffs' expenses, defendants, in their testimony, seem to have taken the position indicated in their answer, that plaintiffs, in accepting the contingent fee employment, had entered into a joint venture with them and had voluntarily undertaken those expenditures in order to enhance their chances of winning plaintiffs' case and earning the large fee which might follow from that result. Notwithstanding, this apparent theory of defendants, the trial judge, without objection by them as far as the record shows, gave the jury the following instructions, among others:

"No. 4

\*   \*   \*   \*   \*   \*

"You are further instructed in this connection that the right of an attorney to be reimbursed for expenses of litigation follows as a matter of law from his making the advance for the benefit of the litigation he was employed to conduct, *even where his employment was under a contingent fee agreement, if such agreement was silent as to expenses.*

\*   \*   \*   \*   \*   \*

"No. 5

"You are further instructed that if you find and believe from a prepon-

derance of the evidence in this case, that the plaintiffs incurred expenditures and made advancements for and on behalf of the defendants in the handling of the litigation involved, and that such expenditures and advancements were for the use and benefit of the defendants in said litigation, and that such expenditures and advancements were necessary, reasonable and proper in the handling of said litigation, then and under such circumstances your verdict should be for the plaintiffs and against the defendants in such amount and for such sum as will reasonably compensate the plaintiffs, not to exceed however in any event, the amount of $857.66, with interest at 6% per annum from April 8, 1958, as prayed for in their petition.

"Unless you should so find, your verdict should be for the defendants." (Emphasis ours.)

Upon submission of the cause to the jury, a verdict was returned in favor of the defendants, and judgment was entered accordingly. After the overruling of plaintiffs' motion for a new trial, they perfected the present appeal.

Under two propositions plaintiffs present for reversal of the trial court's judgment, they contend, among other things, that it, and the verdict, are contrary to the evidence, and that the trial court erred in refusing to declare a mistrial (as they requested) on account of certain prejudicial statements defendants' counsel made in his closing argument to the jury.

Under their first proposition, plaintiffs point out that, on the basis of the evidence, there was no question but that plaintiffs were employed as defendants' attorneys on a contingent fee basis, without any express agreement as to who would pay the expenses they incurred in said employment, and that there was no question but that the expenses listed in plaintiffs' itemized statement were so incurred, and paid by plain-

tiffs. They also contend that there was "* * * no evidence that such expenses * * * were unreasonable or unnecessary to the conduct of the litigation." The quoted statement represents a negative approach to the matter. Under the instructions of the court (about which no question has been raised and whose correctness we will therefore assume) the burden was upon plaintiffs to prove the reasonableness and necessity of their expense items. But, as hereinbefore indicated, there can be no question, in our opinion, but that they did this—at least as to some of the items. As to these, the testimony of one of the plaintiffs, Mr. G. C. Spillers, Jr., concerning their reasonableness and necessity was undisputed. In Taggart v. Snipes, 174 Okl. 449, 50 P.2d 640, this court held, in part, as follows:

"Where the positive testimony of the witness is uncontradicted and unimpeached, whether by other positive testimony or by circumstantial evidence, either intrinsic or extrinsic, and where it is not inherently improbable, either in itself or in connection with other circumstances, or where it does not contain contradictions in itself or with other evidence satisfying the court or jury of its falsity, it cannot be disregarded and must control the decision of the court or jury. * * *"

While this rule is not to be applied exactly the same in all cases, and its application in some types of cases is affected by other rules (see Thompson v. Hertz Corp., Okl., 366 P.2d 752, and Furr v. McGrath, Okl., 340 P.2d 243, 249, 250) and by whether or not the testimony involved is that of an interested witness (see Henderson v. Gifford, Okl., 318 P.2d 440, and Alexander v. Gee, Okl. 352 P.2d 915), as was Mr. Spillers in this case, we can perceive of no reason for not applying it in a case like the present one. Here, Mr. Spillers' testimony as a whole was not only tacitly, or in effect, or by inference, supported by the testimony of the defendant Joe Colby, but it was expressly corroborated as to some of the

items. For instance, one excerpt from said defendant's cross examination is as follows:

"Q * * * Mr. Colby, isn't it true as a matter of fact that the items of expense on this statement that was rendered to you as far as the printing of the briefs, the photostats, the costs advanced for Marshal's fees, subpoenas, and so forth, you really considered those necessary to the preparation of this case back in the District Court, didn't you?

* * * * * *

"A Oh, I think some of them were legitimate."

In view of the foregoing rule, as applied to the evidence of this case, there was nothing that the jury could have properly done under the hereinbefore quoted instructions of the court, except return a verdict for plaintiffs for at least a portion of the recovery they sought. As this was not done, we can only conclude that said instructions were not followed, and that the verdict was the result of bias and/or prejudice.

As the verdict and judgment were contrary to the evidence, and to the court's instructions, plaintiffs' motion for a new trial should have been sustained. The trial court's judgment overruling said motion being reversible on this ground alone, it is unnecessary to consider any other alleged error. Accordingly, said judgment is hereby reversed, and this cause is remanded to the trial court with instructions to grant a new trial.

HALLEY, V. C. J., and DAVISON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.

JOHNSON, J., dissents.

JACKSON, Justice (concurring specially).

In this case the plaintiffs were employed on a contingent fee basis. No understanding was had between the parties as to whether clients or attorneys would pay the cost of the litigation. The defendants advanced or paid such costs as they were called upon to pay during preparation for trial and during the trials. At the conclusion of the trial the plaintiffs billed the defendants for costs and *personal expenses* incurred by the plaintiffs in preparing for and in trying the case. Defendants objected to paying the bill and objected especially to the items of personal expenses.

The pleadings as drawn by the parties in the instant case did not clearly define the issues to be tried.

It is clear from the testimony of the Colbys that they were trying the case upon the legal theory that plaintiffs would not be entitled to recover their personal expenses absent an express contract between the parties. However, the case was not submitted to the jury on that theory, and it is not briefed in this court on that theory.

The question submitted to the jury in Instruction No. 5 was whether plaintiffs incurred expenses in handling the litigation; whether such expenditures were of benefit to the litigation; and whether such expenditures were reasonable. In Instruction No. 4, the court told the jury that an attorney is entitled to be reimbursed for his expenses, as a matter of law, even though his employment is on a contingent basis. It should be clearly understood that the majority opinion does not approve Instruction No. 4, and it is doubtful if Instruction No. 5 meets the real issue sought to be tried by the Colbys. However, the Colbys did not object to Instructions Nos. 4 and 5, and in defending the verdict on appeal say:

"We submit that the court's instructions were proper and there was sufficient evidence to support the verdict of the jury."

The evidence is undisputed that plaintiffs incurred expenses in handling the litigation; undisputed that such expenditures were of benefit in the trial of the case; and undisputed that the expenditures were reasonable. But even so, does it follow as a matter of law that an attorney operating under a contingent fee contract is en-

titled for his personal expenses where the agreement is wholly silent upon the matter. I do not believe so, and this question is not briefed by the parties.

It is the duty of a trial court to give proper instructions upon fundamental issues, National Tank Co. v. Scott, 191 Okl. 613, 130 P.2d 316, and where it fails to do so this court may review the instructions even though exceptions were not taken.

In this case the defendants had paid substantial sums for court costs, expert witnesses, and other charges without protest. It is an accepted rule that the courts will construe ambiguous contract as the parties have construed them. In these circumstances plaintiffs are entitled to a new trial to recover, at least, actual court costs expended by them.

I am authorized to state that DAVISON and IRWIN, JJ., concur with the views herein expressed.